John R. HAARSTAD, judgment creditor, Respondent,

v.

Brian GRAFF, Defendant and Judgment Debtor,

v.

STATE FARM FIRE AND CASUALTY COMPANY, garnishee, Petitioner, Appellant.

Nos. C4–93–308, C9–93–546.

Supreme Court of Minnesota.

June 30, 1994.

William M. Hart, R.D. Blanchard, Richard L. Pemberton, Jr., Meagher & Geer, Minneapolis, for appellant.

H. Morrison Kershner, Kent D. Mattson, Pemberton, Sorlie, Sefkow, Rufer & Kershner, Fergus Falls, for respondent.

## OPINION

PAGE, Justice.

State Farm Fire and Casualty Company (State Farm) seeks review of a court of appeals decision holding State Farm had a duty to defend its insured, Brian Graff, in an

action for damages where the injured party, John Haarstad, alleged Graff negligently injured him. At trial, State Farm argued Graff intentionally injured Haarstad and the damages caused thereby were excluded from coverage under the intentional act exclusion of the policy. The jury found Graff did not act intentionally. The trial court, the Honorable Harlan L. Nelson presiding, then ruled the claim was covered and further ordered State Farm to pay both Graff's and Haarstad's attorney fees. The court of appeals reversed the trial court with respect to State Farm's duty to indemnify Graff, holding as a matter of law that because Graff acted intentionally, there was no coverage. At the same time, the court of appeals held State Farm had a duty to defend Graff and affirmed the trial court's award of attorney fees. 506 N.W.2d 341. We hold that where an insurer knows irrefutably that the conduct alleged in the complaint to be negligent was intentional and therefore excluded from coverage, the insurer has no duty to defend. We reverse the court of appeals with respect to State Farm's duty to defend its insured and the award of attorney fees.

Graff began dating Becky Schumacher sometime in 1986. The relationship broke off in the fall of 1987. According to Graff, but not Schumacher, the relationship resumed in May of 1988. At that time Graff lived in his brother's house in Minneapolis and worked in the Twin Cities area. Schumacher lived and worked in Fergus Falls. Graff frequently visited Fergus Falls.

Haarstad, a resident of Florida, met Schumacher in Fergus Falls while visiting relatives in December of 1987. After meeting, Haarstad and Schumacher began exchanging phone calls and letters. Haarstad saw Schumacher again when he visited Fergus Falls in February of 1988. As part of a planned visit to Fergus Falls in July of 1988, Haarstad arranged a date with Schumacher for the evening of July 4.

Graff was also in Fergus Falls for the July 4 holiday and claims that he was to meet Schumacher at Pier 38 on Otter Tail Lake on the evening of July 4. Schumacher, however, spent July 4 with Haarstad and did not meet Graff that evening. At the end of their date on July 4, Haarstad and Schumacher went to Schumacher's home where they spent the night.

Graff was scheduled to work in Minneapolis on the morning of July 5. He claims he became concerned about Schumacher when she did not show up at the bar for their date or contact him to cancel it. As a result of his concerns, Graff claims he stopped at Schumacher's home at 4:00 a.m. to check on her, as he was leaving Fergus Falls to return to the Twin Cities for work. According to Graff, on arriving at Schumacher's house, he checked the front door, which was locked. He knocked, and when no one answered, went to Schumacher's bedroom window. Depending on whom you believe, Graff either knocked on the window, or knocked on it and hollered for Schumacher to open the door.

Awakened by the noise, Schumacher told Haarstad to get dressed and to hide in an unoccupied adjacent bedroom. Schumacher went to the front door and either let Graff in or was pushed aside by him as he entered. Graff questioned Schumacher about where she had been and what she had been doing. According to Graff, he then went to use the bathroom. On exiting the bathroom, Graff claims he noticed a pair of men's shorts on the floor of Schumacher's bedroom. He proceeded to open the door to the bedroom Haarstad was hiding in, where he found Haarstad seated naked on the bed. According to Haarstad, Graff opened the door and shouted, "You son of a bitch, I'm going to kill you," charged across the room, grabbed Haarstad around the neck, and punched him in the face several times, ultimately breaking his jaw in two places. Haarstad claims that when Graff stopped beating him Graff said words to the effect of: "How do you feel now?" Graff contends something snapped when he saw Haarstad in the bedroom and claims not to recall exchanging words with Haarstad. He insists he reflexively lost control, hit Haarstad, and left the room. After a criminal investigation, Graff pled guilty to third degree assault.

On October 27, 1989, Haarstad sued Graff, claiming Graff had "negligently and carelessly engaged in a course of conduct that resulted in bodily injury." Graff tendered defense

of the suit to State Farm under his brother's homeowner's policy. On July 19, 1990, State Farm denied coverage under the intentional act exclusion of the policy and refused to defend, basing its denial on the results of its investigation into the incident, which included taking Graff's statement on May 4, 1990. Its investigation led State Farm to conclude Graff's attack on Haarstad was intentional.

By March 10, 1991, Haarstad and Graff had entered into a *Miller v. Shugart* agreement,[1] which stipulated to entry of judgment in favor of Haarstad for $30,000. The agreement further stipulated to "an accident [having] occurred wherein the Plaintiff, John R. Haarstad * * * was struck on the face and head by the Defendant, Brian Graff." The agreement called for Haarstad to collect the $30,000 judgment solely from the State Farm insurance policy. In addition, Graff assigned Haarstad all rights he had against State Farm, including Graff's cause of action against State Farm for breaching its contract to defend him.

Haarstad served a supplemental complaint on State Farm, seeking to recover the stipulated judgment. The case was tried to a jury which found Graff did not intentionally break Haarstad's jaw.[2] The trial judge found Graff covered under the policy and awarded Haarstad the $30,000 in damages stipulated in the Miller–Shugart agreement, plus interest and costs.

Both parties made post-trial motions. Haarstad moved for attorney fees from State Farm, and State Farm moved for a judgment notwithstanding the verdict or a new trial. The trial court denied State Farm's motion, but granted, by separate judgment, Haarstad's motion for attorney fees in the amount $12,734.40, representing the $2,109.90 spent by Graff for his defense and the $10,624.50 spent by Haarstad for attorney fees.

State Farm then appealed from both the judgment for damages and the judgment awarding attorney fees. The appeals were consolidated and the court of appeals, while finding State Farm had no duty to indemnify Graff, determined that, "as a matter of law, State Farm had a duty to defend Graff against Haarstad's negligence action" because the initial complaint alleged negligence. The court of appeals in essence concluded that merely because the complaint alleged a negligent injury, State Farm's duty to defend was triggered even though facts outside the complaint, but known to State Farm, clearly indicated the cause of action was based on an intentional, and, therefore, uncovered, act. Thus, the issue presented for our review is whether State Farm had a duty to defend Graff. Review was not sought on State Farm's duty to indemnify Graff.

The interpretation and construction of an insurance contract is a question of law, subject to de novo review. *Iowa Kemper Ins. Co. v. Stone,* 269 N.W.2d 885, 886–87 (Minn.1978). A "policy should be construed as a whole with all doubts concerning the meaning of language employed to be resolved in favor of the insured." *Canadian Universal Ins. Co., Ltd. v. Fire Watch,* 258 N.W.2d 570, 572 (Minn.1977). In typical liability insurance contracts, the insurer has an obligation to indemnify an insured for covered claims and, if a "claim is not clearly outside coverage, the insurer has a duty to defend." *Prahm v. Rupp Constr. Co.,* 277 N.W.2d 389, 390 (Minn.1979). The general rule is that the insurer's duty to defend is determined by considering the allegations of the complaint in light of the relevant policy language. *Garvis v. Employers Mut. Casualty Co.,* 497 N.W.2d 254, 256 (Minn.1993). In addition to looking at the complaint, the insurer can look to facts outside the complaint to determine whether coverage exists. *Farmers & Merchants State Bank of Pierz v. St. Paul Fire & Marine Ins. Co.,* 309 Minn. 14, 18, 242 N.W.2d 840, 843 (1976) (stating that "while

---

1. In *Miller v. Shugart,* 316 N.W.2d 729, 733–34 (Minn.1982), we gave our approval to agreements of this type, whereby insureds enter into settlements that relieve them of personal liability at a time when their insurance coverage is in doubt.

2. The jury was given the following special verdict question: "Did Brian Graff expect or intend to cause the resulting injuries John Haarstad received on July 5, 1988?" The jury answered "No." The jury may well have been confused by the special verdict question because the question did not distinguish between intending to injure and intending to cause the specific injury.

the insurer must as a rule defend any suit which alleges a claim within coverage, if the insurer has knowledge from facts dehors the complaint that the acts giving rise to the suit are outside the coverage of the policy, there is no duty to defend").

In State Farm's view, the trial court and the court of appeals incorrectly refused to allow State Farm to look beyond the face of the complaint in determining its duty to defend. State Farm, citing *Woida v. North Star Mutual Insurance Co.,* 306 N.W.2d 570, 574 (Minn.1981), contends that it properly investigated the complaint, took Graff's statement, and determined there was no coverage because Graff intentionally assaulted and battered Haarstad.

Haarstad counters that when State Farm refused Graff's tender of defense, State Farm could not have conclusively known Graff's acts were not covered. He contends that because Graff told State Farm his striking of Haarstad was "just a reaction" and because Graff said, "I don't know what I did or why I did it. But he got up and I punched him two or three times and knocked him down and turned around and punched the door on the way out, and left," State Farm did not have sufficient information to establish conclusively that the claim was not covered. Haarstad relies on *Economy Fire & Casualty Co. v. Iverson,* 445 N.W.2d 824, 826 (Minn.1989), which states:

> The duty to provide a defense is based on the allegations contained in the plaintiff's complaint. An insurer must defend where any part of the claim is arguably within the scope of policy coverage. *Brown v. State Auto & Cas. Underwriters,* 293 N.W.2d 822, 825–26 (Minn.1980). This is a broader duty than the duty to indemnify, and this court has held an insurer should provide the defense while reserving its right to contest coverage based on facts developed at trial. *Id.*

*See also Garvis v. Employers Mut. Cas. Co.,* 497 N.W.2d 254, 256 (Minn.1993). Haarstad, citing *Prahm* and *Farmers & Merchants State Bank,* contends that unless State Farm knew facts at the time it refused Graff's tender of defense conclusively establishing Graff's act was intentional, State Farm was obligated to accept the defense.

Here, there is no duty to defend because the claim is clearly outside the coverage provided by the policy. At the time State Farm determined it had no duty to defend, it had ample information before it to make that determination. Based on its interview of Graff, State Farm knew Graff had gone uninvited to Schumacher's house at a very early hour, had decided to search a bedroom he had no business searching, and had crossed from the door of the room to the bed to attack the man he found there, a man who had in no way threatened or provoked Graff.

■ Given the viciousness of Graff's unprovoked assault on Haarstad, the resulting injuries were either expected or intended by Graff and are, therefore, clearly outside the coverage of the policy. Because State Farm in this case had sufficient knowledge of Graff's intentional acts independent of the allegations in the complaint, we hold State Farm had no duty to defend in this case. We reverse the court of appeals' decision with respect to the award of attorney fees and State Farm's duty to defend its insured.

COYNE, J., took no part in the consideration or decision of this case.