United States Court of Appeals
for the eighth circuit
_____

No. 96-2277
_____

Justus Graf Von Kerssenbrock-          *
Praschma, a citizen of Germany,        *
                                       *
            Appellant,                 *
                                       *  Appeal from the United
States
            v.                         *  District Court for the
                                       *  Western District of
Missouri.
John Saunders, Director of the         *
Missouri Department of                 *
Agriculture; Jeremiah W. Nixon,        *
Attorney General of the State of       *
Missouri,                              *
                                       *
            Appellees.                 *
                                       _____

                    Submitted:  April 14, 1997
                       Filed:  August 1, 1997
                                  _____

      Before FAGG, MAGILL, and BEAM, Circuit Judges.
                                  _____

      MAGILL, Circuit Judge.

            Justus Graf Von Kerssenbrock-Praschma appeals both the
      district court's(1) dismissal of his Just Compensation Clause
claim
      for lack of subject matter jurisdiction and the district
court's
      grant of summary judgment against Praschma on his Equal

(1)     The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

Protection Clause claim.  He sought to enjoin Missouri enforcement of an anti-alien farmland transfer statute relating to the transfer of farmland to his two sons who live in Germany.  On appeal, Praschma argues that: (1) the enforcement of sections 442.560 through 442.592 of the Missouri Revised Statutes (the Missouri statute), Mo. Rev. Stat. §§ 442.560-442.592 (1987 & Supp. 1989), would violate the Treaty of Friendship, Commerce and Navigation between the United States and the Federal Republic of Germany (FCN Treaty), 7 U.S.T. 1839 (1956); (2) the enforcement of the Missouri statute would violate equal protection; and (3) the district court has subject matter jurisdiction to hear Praschma's takings claim even though Praschma has not yet attempted to obtain just compensation through state procedures.  We affirm.

I.

In a prior appeal, this Court summarized the background of this case as follows:

Praschma is a sixty-six-year-old German citizen.  In the spring and summer of 1978, he obtained fee simple absolute title in two tracts of Missouri farmland totalling approximately 1100 acres.  Praschma has indicated that he wishes to "devise, deed, transfer or otherwise dispose of" the two tracts of farmland to Georg and Justus, his two sons, who are also aliens.  Neither son is a plaintiff in this action.  Praschma has executed a will that leaves the farmland to his son Georg, and he has indicated that he wishes to transfer one farm to each of his sons by deed.

Mo. Rev. Stat. § 442.571(1) (1986) prevents acquisition of agricultural land by aliens.  The statute applies to any transfer by Praschma to his sons, but does not apply to Praschma's holding of the land because the statute became effective after Praschma acquired his land and contains a grandfather clause exempting lands held by aliens before the effective date of the statute.  Mo. Rev. Stat. §§ 442.576(1) (1986), 442.586 (1986 & Supp. 1994).  Mo. Rev. Stat. § 442.576 provides the means for enforcing the scheme. Upon learning of a violation, the attorney general is instructed to obtain a court order requiring the alien owner to

divest himself of the land.  If the alien does not comply with the order within two years, the land is sold at public sale.

Praschma brought an action for injunctive relief, arguing that Missouri's statutory scheme is unconstitutional on its face and as applied because it violates (among other things) the Takings Clause of the Fifth Amendment, the Ex Post Facto Clause, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment.  The district court dismissed the action because it found that Praschma lacked standing, and Praschma timely appealed.

Von Kerssenbrock-Praschma v. Saunders, 48 F.3d 323, 324-25 (8th Cir. 1995).  This Court reversed the district court's dismissal and remanded, holding that Praschma had suffered injury in fact and, thus, had standing.  Id. at 325-26.

Upon remand, the district court granted a motion to dismiss Praschma's due process, just compensation, and state law claims.  In dismissing the takings claim, the district court held that it lacked jurisdiction over the claim because Praschma "has made no attempt to avail himself of the many adequate remedies that might be afforded him in the state courts of Missouri . . . ."  Order (Feb. 16, 1996) at 11, reprinted in J.A. at 59.

The district court then called for motions for summary judgment on Praschma's remaining equal protection and ex post facto claims.  On April 17, 1996, the district court granted summary judgment in favor of the state officials.  In granting summary judgment on the equal protection claim, the court held that the Missouri statute was rationally related to a legitimate state interest and that Praschma had failed to provide evidence of invidious discrimination.  Praschma appeals.

## II.

Praschma first argues that enforcement of the Missouri statute would violate the FCN Treaty. We decline to consider this argument for the first time on appeal.

The general rule is that "[n]ormally, a party may not raise an issue for the first time on appeal as a basis for reversal." Seniority Research Group v. Chrysler Motor Corp., 976 F.2d 1185, 1187 (8th Cir. 1992) (citing cases); see also Singleton v. Wulff, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."); Moad v. Arkansas State Police Dep't, 111 F.3d 585, 587 (8th Cir. 1997) ("We have examined the record carefully and we find no evidence that this issue was ever raised in the district court . . . . We therefore decline to consider the issue . . . ."); Kosulandich v. Survival Tech., Inc., 997 F.2d 431, 433 (8th Cir. 1993) ("Notwithstanding the dubious validity of these claims, we will not address them head-on for the first time on appeal.").

As this Court has stated:

> The rationale for the rule is twofold. First, the record on appeal generally would not contain the findings necessary to an evaluation of the validity of an appellant's arguments. Second, there is an inherent injustice in allowing an appellant to raise an issue for the first time on appeal. A litigant should not be surprised on appeal by a final decision there of issues upon which they had no opportunity to introduce evidence. A contrary rule could encourage a party to "sandbag" at the district court level, only then to play his "ace in the hole" before the appellate court.

Stafford v. Ford Motor Co., 790 F.2d 702, 706 (8th Cir. 1986) (citations omitted); see also Singleton, 428 U.S. at 120.

In this case, our consideration of the FCN Treaty issue would implicate both of these rationale. First, we are not satisfied that the record on appeal contains all of the findings necessary for a full evaluation of Praschma's argument. See Stafford, 790 F.2d at 706. Specifically, were Praschma to prevail in arguing that the Missouri statute conflicts with the FCN Treaty, unresolved factual issues would remain regarding whether the FCN Treaty even applies to the anticipated transfer of Praschma's Missouri agricultural land to his sons. For example, the state officials argue that the evidence may establish that the transfer is not related to the conduct of Praschma's commercial enterprise and therefore not within the scope of the FCN Treaty's provisions. Although we acknowledge our ability to consider the purely legal question of whether the Missouri statute is in conflict with the FCN Treaty, we decline to make such a pronouncement in a factual vacuum.

Second, we are particularly mindful of the "inherent injustice" in allowing Praschma to raise the FCN Treaty issue for the first time on appeal. See id. The state officials should not be surprised by a decision based on the FCN Treaty when they had no opportunity to introduce evidence on that issue. See id. Our consideration of the FCN Treaty issue would ratify Praschma's decision to "'sandbag'" before the district court, and to "play his 'ace in the hole'" before this Court. See id.

However, the general rule against consideration of an issue not passed upon below is not absolute. As the Supreme Court has stated:

> The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases. We announce no general rule. Certainly there are circumstances in which a federal appellate court is justified in resolving an

issue not passed on below, as where the proper resolution
is beyond any doubt or where injustice might otherwise
result.

Singleton, 428 U.S. at 121 (quotations and citations omitted); see

also Seniority Research Group, 976 F.2d at 1187 ("There are exceptions, as where the obvious result of following the rule would

be a plain miscarriage of justice or would be inconsistent with substantial justice.").

This is not a case where either "the proper resolution is beyond any doubt" or "where injustice might otherwise result." Singleton, 428 U.S. at 121 (quotation omitted).  Although we believe treaty interpretation is of great importance, we cannot say

that injustice will result if we fail to accept Praschma's invitation to interpret the FCN Treaty in this context.  But cf.

Fortino v. Quasar Co., 950 F.2d 389, 391 (7th Cir. 1991) (considering for the first time on appeal defendant's position that

treaty provides, not a defense, but rather "essential background").

Therefore, because Praschma did not argue to the district court that the enforcement of the Missouri statute would violate

the FCN Treaty, we will not consider that issue on appeal.(2)

(2)     The state officials further argue that Praschma cannot raise

the FCN Treaty issue on appeal because one of Praschma's interrogatory answers expressly disavowed his reliance on any treaty.  The relevant question and answer are as follows:

INTERROGATORY NO.  14: If you contend that any treaty or agreement between the United States of America and the government of any other nation are superior to or pre-empt or invalidate _ _ 442.591 through 445.591, RSMo, state the name of each other nation and of each treaty or agreement.

ANSWER:  Objection.  Work Product.  I am personally aware of no such treaty at this time.

Answers To Def.'s First Set Of Interrogs. To Pl. at 7, reprinted in J.A. at 392.

Although Praschma presented no argument to the district

court
that the Missouri

## III.

Praschma next argues that the Missouri statute denies him "equal protection of the laws." U.S. Const. amend. XIV, § 1. In evaluating whether a statute violates equal protection, the Supreme Court has set forth various standards, including both a strict scrutiny and a rational basis test. See Graham v. Richardson, 403 U.S. 365, 376 (1971) (applying strict scrutiny test which requires that the statute be "necessary to promote a compelling governmental interest"); City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 446 (1985) (applying rational basis test which requires that the statute be "rationally related to a legitimate governmental purpose"). Praschma asserts both that: (1) the constitutionality of the Missouri statute must be subjected to the strict scrutiny test and (2) the Missouri statute fails both the strict scrutiny test and the rational basis test. We decline to address Praschma's first assertion and disagree with his second.

In granting the state official's motion for summary judgment, the district court held that "[t]he goals and concerns articulated by the legislation's proponents provide

statute violates any treaty, we do not believe that his interrogatory answer waived such an argument. See Eli Lilly & Co. v. Staats, 574 F.2d 904, 910 (7th Cir. 1978) ("Although [defendant's] Answer to plaintiff's Interrogatory 10 denied that 31 U.S.C. §§ 53 and 67 were the basis for his 'claim of right to have access to and examine' plaintiff's books and records, the answer did not constitute an abandonment of reliance on those provisions . . . ."); Guilfoyle v. Accounting Management Service, Inc., No. 84 C 10913, 1986 WL 5640, at *1 (N.D. Ill. May 7, 1986) ("The plaintiff submitted an interrogatory to the defendant seeking

the identity of any clients the defendant would assert were produced by Accounting Management Service for the plaintiff, and the defendant responded that he lacked knowledge as to what Accounting Management Service did.  Contrary to plaintiff's assertion, this interrogatory answer does not constitute a waiver of any right to claim a deduction for income, but the answer did convey to the plaintiff that the defendant had no information on the amount of plaintiff's income.").

a rational basis for this statute."  Order (Apr. 17, 1996) at 6, reprinted in J.A. at 479.  Before reaching this conclusion, the district court first determined that the rational basis test was the proper test to apply in analyzing the constitutionality of the Missouri statute.  In making this determination, the district court noted that Praschma did "not dispute [the state official]'s contention that the rational basis test should be applied in this instance."  Id. at 3, reprinted in J.A. at 476 (citing Pl.'s Opp'n at 5).

It is on appeal to this Court that Praschma for the first time argues that the Missouri statute is subject to the strict scrutiny analysis.  Compare Appellant's Br. at 28 ("Because the Missouri statute creates a classification based on alienage, its constitutionality must be reviewed under strict scrutiny." (quotations, alteration, and footnote omitted)), and id. at 29 ("Strict scrutiny also is mandated in this case because the Missouri statute interferes with a fundamental right."), with Compl. at 5, reprinted in J.A. at 27 ("The Statutes have taken a fundamental right to transfer the farms without any rational basis." (emphasis added)), and Pl.'s Mot. for Summ. J. at 1, reprinted in J.A. at 74 ("Plaintiff [Praschma] has been treated unequally without any rational basis." (emphasis added)), and Pl.'s Opp'n at 3 ("The record in support of Mr. [Praschma's] Summary Judgment shows there can be absolutely no rational basis to treat Mr. [Praschma] so shabbily (and unconstitutionally)." (emphasis added)).

Because the district court did not pass upon this issue, we will not consider it on appeal.  See Singleton, 428 U.S. at 120; Dorothy J. v. Little Rock Sch. Dist., 7 F.3d 729, 734 (8th Cir. 1993) ("While complaints are to be liberally construed, an attempt to amend one's pleadings in an appellate brief comes too late." (quotation omitted)); cf. United States v. Frame, 885 F.2d 1119, 1138 n.14 (3d Cir. 1989) ("[The defendant] never argued that strict scrutiny was appropriate under the equal protection analysis either

in his answer and counterclaim, his motions before the district court, his briefs to this court, or during oral argument. Thus, neither the government nor the district court had the opportunity to consider either whether strict scrutiny would be applicable to [defendant]'s claim, or whether the Act would pass constitutional muster under this

more exacting standard of review.  Accordingly, we decline to
address this issue in this appeal.").

Furthermore, we believe that the Missouri statute is
rationally related to a legitimate governmental purpose.  The
state
officials argue that the statute serves Missouri's interests
by:
(1) protecting the state's food supply; (2) preserving the
family
farm system; (3) slowing the rising cost of agricultural land;
and
(4) mirroring restrictions on American's ability to acquire
European and Japanese land.  Because there is a rational
relationship between the disparate treatment of nonresident
aliens
and these legitimate governmental purposes, the Missouri
statute
does not violate Praschma's right to equal protection.(3)  Cf.
MSM
Farms, Inc. v. Spire, 927 F.2d 330, 332-34 (8th Cir. 1991)
(holding
that state constitutional provision prohibiting nonfamily farm
corporations from owning and operating Nebraska farm and ranch
land
does not violate equal protection because retaining and
promoting
family farm operations in Nebraska were legitimate state
interests
and voters reasonably could have believed that

(3)     Praschma also argues that because two Missouri counties
are
excluded from the statute's restrictions, the statute fails the

rational basis test.  We disagree.

Equal protection does not apply to legislative distinctions between political subdivisions.  See McGowan v. Maryland, 366 U.S. 420, 427 (1961) ("[W]e have held that the Equal Protection Clause relates to equality between persons as such, rather than between areas and that territorial uniformity is not a constitutional prerequisite. . . .  [W]e have noted that the prescription of different substantive offenses in different counties is generally a matter for legislative discretion."); Reeder v. Kansas City Bd. of Police Comm'rs, 796 F.2d 1050, 1053 (8th Cir. 1986) ("[T]he Supreme Court has long held that when the state chooses to regulate differentially, with the laws falling unequally on different geographic areas of the state, the Equal Protection Clause is not violated so long as there is no underlying discrimination against particular persons or groups.  The Equal Protection Clause protects people, not places.  So long as all persons within the jurisdictional reach of the statute are equally affected by the law, it matters not that those outside the territorial reach of the law are free to behave differently." (citations omitted)).

enacting the initiative would promote family farm operations); Lehndorff Geneva, Inc. v. Warren, 246 N.W.2d 815, 825 (Wis. 1976) (holding that a Wisconsin statute making it unlawful for a nonresident alien to acquire or own more than 640 acres of land in Wisconsin does not violate the Equal Protection Clause of the United States Constitution because "[l]imiting the benefits of land ownership to those who share in the responsibilities and interests of residency is not an unreasonable exercise of legislative choice").

## IV.

Praschma also argues that the district court erred in dismissing his takings claim for lack of subject matter jurisdiction.(4)  We disagree.

(4)      The state officials argue that this Court lacks jurisdiction over Praschma's just compensation claim because the order dismissing that claim is not referred to in the notice of appeal. We disagree.

This Court has stated the governing rules as follows:

The requirement of Federal Rule of Appellate Procedure 3(c) that a notice of appeal "designate the judgment, order, or part thereof appealed from" is a jurisdictional prerequisite of the appellate court. . . . The Eighth Circuit traditionally construes notices of appeal liberally, but the intent to appeal the judgment in question must be apparent and there must be no prejudice to the adverse party.

Burgess v. Suzuki Motor Co., Ltd., 71 F.3d 304, 306-07 (8th Cir. 1995).

Here, Praschma's intent to appeal is apparent from the interrelationship between the two district court orders and the fact that Praschma's Appeal Information Form indicates he will argue "constitutional reasons, primarily equal protection of laws." Appellant's Form A (Appeal Information Form), reprinted in

Appellees' Br. Addendum at 6.  Moreover, the state officials fully argue the takings issue in their brief and do not allege they have been prejudiced in any way.  Consequently, we will address

-10-

The general rule is that a plaintiff must seek compensation through state procedures before filing a federal takings claim against a state.(5)  See Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 195 (1985) ("[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.").(6)  The rationale underlying the Williamson requirement is that "a property owner has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State . . . ."  Id.   Under this

Praschma's takings claim.

(5)     Missouri law allows for a property owner to seek compensation through an inverse condemnation proceeding.  See generally Mo. Rev. Stat. Const. Art. I, § 26 (1986 & Supp. 1989) ("That private property shall not be taken or damaged for public use without just compensation."); Tierney v. Planned Indus. Expansion Auth. of Kansas City, 742 S.W.2d 146, 155 (Mo. 1987) (holding that inverse condemnation action "may be maintained in spite of sovereign immunity to fulfill the [Missouri state] constitutional command that property not be taken without just compensation"); Zumalt v. Boone County, 921 S.W.2d 12, 15 (Mo. Ct. App. 1996) ("To state a claim for inverse condemnation, a plaintiff must allege his property was taken or damaged by the state for public use without just compensation.  The landowner does not have to show an actual physical taking of property, but must plead and prove an invasion or an appropriation of some valuable property right which the landowner has to the legal and proper use of his property which invasion or appropriation directly and specially affects the landowner to his injury." (quotations and alternations omitted)).

(6)     Similarly, a plaintiff bringing suit against the United States, rather than an individual state, must seek compensation through federal procedures before filing a federal takings claim. See Williamson, 473 U.S. at 195 ("[W]e have held that taking claims against the Federal Government are premature until the property owner has availed itself of the process provided by the Tucker Act, 28 U.S.C. § 1491.").  The procedure for seeking compensation from the United States is to file a claim in the United States Court of Federal Claims.  See 28 U.S.C. § 1491 (1994 & Supp. I 1995).

standard, the Missouri statute has not violated Praschma's right to just compensation because Praschma has not sought compensation from the state.

Praschma counters that this requirement only applies to federal suits seeking damages, not to suits, such as his, seeking only injunctive relief.  Praschma finds support for this proposition by drawing an inference from Hodel v. Irving, 481 U.S. 704 (1987), aff'g sub nom. Irving v. Clark, 758 F.2d 1260 (8th Cir. 1985).  In Irving, the plaintiffs argued that a federal statute seized property without just compensation and sought both injunctive and declaratory relief.  Irving, 758 F.2d at 1262.  The district court found the statute constitutional.  Id. at 1261.  This Court reversed, holding that "the statute is in violation of the fifth amendment."  Id. at 1269.  In Hodel, the Supreme Court upheld this Court's reversal of the district court.  Hodel, 481 U.S. at 718.  The Supreme Court held that the statute effected a taking without just compensation.  Id. at 712-18.  However, neither this Court's nor the Supreme Court's opinions addressed whether jurisdiction was lacking because the plaintiffs failed to avail themselves of the process for compensation provided by the Tucker Act.  Because neither court sua sponte found jurisdiction lacking, Praschma asserts that the courts tacitly acknowledged that the Williamson requirement did not apply because the plaintiffs were not seeking money damages.  We disagree.

First, as neither court directly addressed the question, we do not believe the negative inference Praschma draws for the Hodel opinions establishes the proposition that the Williamson requirement only applies to federal suits seeking damages.  Second, we note that the plaintiffs in Hodel were challenging a federal, rather than a state statute.

Praschma also relies on Dodd v. Hood River County, 59 F.3d 852 (9th Cir. 1995).  However, Dodd merely stands for the proposition

that a federal takings claim against a state can be brought in the district court and need not first be presented in state court. Id. at 860-61. Dodd says nothing about whether state law remedies must first be pursued prior to asserting a federal claim for equitable relief in federal court.

Thus, Dodd is distinguishable in that Praschma does not lack jurisdiction because he has failed to pursue a federal takings claim in state court, but rather because he has failed to pursue the State of Missouri's procedures for compensation.

Finally, Praschma cites Hornell Brewing Co., Inc. v. Brady, 819 F. Supp. 1227, 1244 (E.D.N.Y. 1993), in which the district court found that, where the plaintiff was seeking a declaratory judgment rather than damages, the court had jurisdiction to decide the takings claim, even though the plaintiff had not sought relief pursuant to the Tucker Act.

We do not find Praschma's use of authority persuasive, and therefore we hold that the Williamson requirement applies equally to takings claims for damages and equitable relief brought against the states.

In reaching this conclusion, we find particularly persuasive a similar holding of the Eleventh Circuit:

> [T]he only federal constitutional ground supporting the district court's injunction is [plaintiff]'s Fifth Amendment takings claim. That claim, however, is not ripe. See Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 186, 105 S. Ct. 3108, 3116, 87 L.Ed.2d 126 (1985). A Takings Clause claim does not become ripe unless the state provides no remedy to compensate the landowner for the taking. A property owner cannot claim a violation of the Clause unless the state provides the landowner no procedure (such as an action for inverse condemnation) for obtaining just compensation. Williamson, 473 U.S. at 195, 105 S.Ct. at 3121.

Bickerstaff Clay Prods. Co., Inc. v. Harris County, 89 F.3d 1481, 1490-91 (11th Cir. 1996) (emphasis added).

We also find support for our conclusion from the D.C. Circuit's opinion in Transohio Sav. Bank v. Director, Office of Thrift Supervision, 967 F.2d 598 (D.C. Cir. 1992). In Transohio, the court addressed the question of whether the Williamson requirement blocked district court jurisdiction over a takings claim for injunctive relief against the Federal Government. In dicta, the Transohio court concluded that there was a limit upon the district court's jurisdiction and that "the district court should accept jurisdiction over takings claims for injunctive relief in the few cases where a Claims Court remedy is so inadequate that the plaintiff would not be justly compensated." Id. at 613 (quotations omitted). In the context of a claim for injunctive relief against a state, we hold that the district court's jurisdiction is similarly limited. We expressly leave undecided the question, not argued in this appeal, of whether the district court would have jurisdiction over a takings claim for injunctive relief where the state remedy is "so inadequate that the plaintiff would not be justly compensated." See id. (quotations omitted).

Thus, the district court properly found that it did not have jurisdiction over Praschma's takings claim.

V.

Accordingly, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.