# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2321

_____

| | | |
|---|---|---|
| AMCO Insurance Company, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Inspired Technologies, Inc., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 16, 2011
Filed: August 10, 2011

_____

Before SMITH, ARNOLD, and SHEPHERD, Circuit Judges.

_____

SMITH, Circuit Judge.

3M Company ("3M") sued Inspired Technologies, Inc. (ITI) for allegedly unfair and false advertising, in violation of the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, and the Minnesota Uniform Deceptive Trade Practices Act (MDTPA), Minnesota Statutes §§ 325D.43-325D.48. ITI tendered defense of the lawsuit to its liability-insurance carrier, AMCO Insurance Company ("AMCO"), and the lawsuit ultimately settled. Following the settlement between 3M and ITI, AMCO filed the instant declaratory-judgment action against ITI, seeking a declaration that it did not owe ITI any duty to defend or indemnify because the insurance policy's knowledge-of-falsity exclusion excluded the 3M suit from coverage. The district court agreed with AMCO and granted the insurer affirmative summary judgment, concluding that the exclusion

barred coverage. ITI presently appeals, and, for the reasons that follow, we reverse and remand.

## I. *Background*

ITI is a small start-up company based out of Le Sueur, Minnesota. Before this lawsuit, ITI purchased from AMCO a "Premier Business Owner's" insurance policy and a "Commercial Umbrella Liability" insurance policy. At issue in this case is the Premier Business Owner's policy ("the Policy"), which amounts to a standard commercial general-liability policy or "CGL." The Policy covered, among other things, "Advertising and Personal Injury Liability" but contained an accompanying "knowledge-of-falsity" exclusion that provided as follows:

2. EXCLUSIONS
This insurance, including any duty we have to defend "suits", does not apply to:
   a. "Personal and advertising injury":
      1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";
      2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity

ITI and AMCO dispute whether this knowledge-of-falsity exclusion relieves AMCO of its duty to defend ITT.

In November 2007, ITI began marketing a new product that it called "Frog Tape," a painter's masking tape designed to compete with that of other manufacturers, including 3M. Shortly after ITI commenced its marketing campaign, 3M mailed ITI "cease and desist" letters, complaining that ITI's Frog Tape advertisements were false and misleading. In December 2007, ITI retained the law firm of Winthrop &

Weinstine ("Winthrop") to advise ITI on its developing dispute with 3M, and ITI asserts that, as early as January 9, 2008, it notified AMCO of a potential 3M lawsuit.

On April 16, 2008, 3M sued ITI in federal district court, alleging in its two-count complaint that ITI violated the federal Lanham Act prohibiting unfair competition (Count One) and MDTPA prohibiting the same. 3M alleged that "ITI has engaged in an advertising campaign for its Frog Tape product including advertising purporting to depict 3M Tape and claiming that certain tests and product demonstrations prove that 3M Tape performs poorly in specific respects, including bleeding of paint onto surfaces masked by 3M Tape." Notably, 3M alleged in paragraph 12 of its complaint that

> ITI's advertising purporting to depict results from use of 3M Tape is false, misleading, and deceptive in at least the following specific respects:
>
> (a) ITI's marketing brochures are false, misleading, and deceptive because, among other reasons, the purported "Actual Photo" of 3M Tape does not in fact depict an actual photo but instead has been manipulated in a false and deceptive manner in order to depict 3M Tape in an unfavorable way.
>
> (b) ITI's product packaging is false, misleading, and deceptive because the purported "Actual Photo" of 3M Tape is misrepresented in order to depict 3M Tape in a manner that is contrary to its typical use and effectiveness.
>
> (c) ITI's purported depictions of 3M Tape in print and video advertising do not accurately depict the performance of 3M Tape under conditions similar to typical usage in the marketplace or under any test protocol sufficiently reliable or scientific to support ITI's claims.
>
> (d) ITI has displayed videos at the 2007 Hardware Show and thereafter on its website, generally purporting to demonstrate poor performance by 3M Tape by, for

example, depicting three strips of painter's tape placed side-by-side with the representations that the same pressure is applied to Frog Tape and 3M Tape. The statement is false and misleading because in fact the same pressure is not applied to all depicted tapes.

(e) ITI's product packaging and comparative advertising campaign are false and misleading because they claim that poor performance of 3M Tape is proved through purportedly valid testing, when in fact the ITI test conditions are not sufficiently reliable or comparable to conditions of typical use to allow one to conclude with reasonable scientific certainty that they establish the results depicted. Among the varied respects in which ITI's testing deviates from conditions representative of typical applications include its use of application techniques different than those used in typical applications, its use of uncommon or limited purpose paints such as very low-viscosity paints, and its depictions of paint line results from application of tape to atypical surfaces.

Additionally, 3M alleged in its complaint that "[ITI]'s actions have also caused compensable harm to 3M that is recoverable pursuant to 15 U.S.C. § 1117(a)," which awards enhanced damages to a Lanham Act plaintiff who proves that the defendant's unfair competition was "willful." Subsequently, in its responses to one of ITI's ensuing interrogatories, 3M responded as follows:

INTERROGATORY NO. 14: Describe all facts supporting your allegation in paragraph 13 of your Complaint that: "ITI's product packaging and comparative advertising campaign are false and misleading in other respects as well, in that ITI has made other claims about companies' tapes that are incorrect and unsubstantiated."

ANSWER: . . . At least some of ITI's "Actual Photos" cannot be actual photos, but rather are manipulated images. In particular, the picture used

-4-

in advertisements marked as Exhibits 12, 13, and 14 during ITI's Rule 30(b)(6) deposition have plainly been manipulated.

\* \* \*

INTERROGATORY NO. 19: Describe in all possible detail the basis for your claim that ITI's advertisements or demonstrations resulted in consumer confusion or were intended to deceive.

ANSWER: It is apparent that, rather than use an "actual photo" of 3M tape, ITI manipulated a tape image by, among other things, replicating a photo to create a repeating pattern. *Such replication could only occur through intent to deceive. Any claim that ITI has not intended its depictions* of the alleged performance of 3M tape to harm the brand image of 3M tapes *is not plausible*, and 3M does not expect ITI to maintain so implausible a position. By presenting manipulated images of 3M tape, *ITI intended to deceive and confuse*, and did deceive and confuse, potential customers for 3M tapes.

(Emphases added.)

On May 9, 2008, ITI president and owner David Wagner notified AMCO in writing of 3M's lawsuit and, pursuant to the Policy, ITI tendered to AMCO the defense and indemnity of 3M's claims. In that same tender letter, Wagner requested that AMCO consent to Winthrop continuing as ITI's counsel. According to AMCO, it sent a letter to ITI on May 27, 2008, acknowledging receipt of the 3M complaint and stating that AMCO had retained a different attorney, Robert Kuderer of Johnson & Condon, to represent ITI in its defense of the 3M complaint. ITI disputes that it received any immediate agreement by AMCO to defend the lawsuit, but instead that, only on July 17, 2008, two months after initially notifying AMCO of the suit, it did receive AMCO's letter. In any event, this factual dispute is immaterial to the court's resolution of this appeal. Notably, in its letter agreeing to defend ITI per the Policy, AMCO did not reserve its rights to later contest coverage.

On August 8, 2008, after a couple of months of bickering among ITI, AMCO, Winthrop, and Kuderer as to who would represent ITI in the 3M litigation, ITI, Winthrop, and AMCO representatives convened to reach a consensus regarding ITI's defense. At that meeting, AMCO offered to reimburse ITI—at Kuderer's billable rate—for the attorney's fees ITI had paid Winthrop to date. On August 18, 2008, ITI received a letter in which AMCO iterated the terms of this offer. Again, this letter did not include a reservation of rights by AMCO. On August 18, 2008, 3M offered to settle the lawsuit with ITI for a sum of $500,000. On October 1, 2008, during this settlement offer's pendency and in anticipation of a settlement conference scheduled for October 7, 2008, AMCO informed ITI that "there may be applicable exclusions contained in [the Policy] that may apply to exclude coverage for the allegations and claims for relief leveled by 3M against ITI." After reciting in the letter the potentially applicable exclusions, AMCO stated that "[t]his letter is written to notify you that AMCO Insurance Company is reserving all rights and defenses under the terms and provisions of the policy involved herein including, but not limited to, those outlined in this letter."

Eventually, ITI settled with 3M and AMCO consented to paying the agreed settlement. On October 16, 2008, AMCO filed the instant declaratory-judgment action seeking a declaration that it owed no duty to defend or indemnify ITI because the Policy's exclusionary provisions excluded the 3M suit from coverage.

AMCO moved for summary judgment in this declaratory action, and, on February 19, 2010, the district court granted AMCO's motion. Most pertinent for our purposes, the district court concluded that AMCO owed no duty to defend ITI against 3M's lawsuit because the Policy's "knowledge-of-falsity" exclusion excluded coverage for 3M's Lanham Act claims. Specifically, the district court, relying on 3M's statements in its interrogatory answer that "such replication could only occur through intent to deceive," concluded that "[i]t would defy logic to interpret the complaint's language as alleging anything other than that ITI acted falsely and with knowledge of

that falsity." Presently, ITI appeals and, for the reasons that follow, we reverse and remand.

## II. *Discussion*

On appeal, ITI urges that the district court erred in concluding that the Policy's "knowledge-of-falsity" exclusion relieved AMCO of any duty to defend against 3M's Lanham Act claims. Most relevantly, ITI argues that the district court erred because (1) it failed to recognize that, under Minnesota law, a duty to defend all claims exists when *any one* claim arguably is covered by the policy's language; and (2) it accorded too much weight to 3M's interrogatory answers and, in so doing, disregarded the complaint's averments. In response, AMCO counters that the district court properly concluded that the knowledge-of-falsity exclusion obviated its duty to defend because 3M's interrogatory answers demonstrate that 3M actually sued ITI for intentional conduct. ITI is correct in its first argument, and we reverse the district court's summary judgment and remand accordingly.

Because this case is before the court on diversity jurisdiction, "[t]his [c]ourt will apply the substantive law of the forum state, Minnesota." *Callas Enters., Inc. v. Travelers Indem. Co. of Am.*, 193 F.3d 952, 955 (8th Cir. 1999) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). "We review *de novo* the district court's application of state law, and, if the state law is ambiguous, this [c]ourt predicts how the highest court of that state would resolve the issue." *Id.* The Minnesota Supreme Court has consistently stated that, "[b]ecause most insurance policies are preprinted forms drafted solely by insurance companies—basically contracts of adhesion—policy words of inclusion will be broadly construed, and words of exclusion are narrowly considered." *Gen. Cas. Co. of Wisc. v. Wozniak Travel, Inc.*, 762 N.W.2d 572, 575 (Minn. 2009).

Critically, under Minnesota law, "[a]n insured's [sic] 'duty to defend extends to every claim that 'arguably' falls within the scope of coverage[, and] the duty to defend

one claim creates a duty to defend all claims." *Id.* at 576 (quoting *Woodale Builders, Inc. v. Md. Cas. Co.*, 722 N.W.2d 283, 302 (Minn. 2006)). We conclude that the district court erred in concluding that the knowledge-of-falsity exclusion negated AMCO's entire duty to defend because where multiple claims are present the district court failed to ensure that *no single claim* by 3M *arguably fell* within the scope of coverage. *See id.*

As an initial matter, contrary to ITI's contention, the district court's reliance on 3M's interrogatory answers to deny coverage was not error. Admittedly, the general rule in Minnesota is that "[t]he obligation to defend is contractual in nature and is generally determined by the allegations of the complaint against the insured and the indemnity coverage afforded by the policy." *Farmers & Merchs. State Bank of Pierz v. St. Paul Fire & Marine Ins. Co.*, 242 N.W.2d 840, 842 (Minn. 1976); *see also Meadowbrook, Inc. v. Tower Ins. Co.*, 559 N.W.2d 411, 418 n.19 (Minn. 1997) ("[T]his court typically will determine a duty to defend by comparing only those allegations in the *complaint* with the appropriate language in the *policy*."). "However, the complaint is not controlling when actual facts clearly establish the existence or nonexistence of an obligation to defend." *Farmers & Merchs. State Bank*, 242 N.W.2d at 842 (quotation and citation omitted). But "[*o*]*nly* when actual facts within the insurer's knowledge *clearly establish* the existence or nonexistence of an obligation to defend, will [the Minnesota Supreme Court] hold that the complaint is not controlling." *Meadowbrook, Inc.*, 559 N.W.2d at 418 n.19 (emphases added).

Here, AMCO and the district court relied on 3M's sworn interrogatory answers as "actual facts." While no Minnesota cases have authorized using interrogatory answers as "actual facts" for coverage determinations, interrogatory answers are sworn statements and "may be used to the extent allowed by the Federal Rules of Evidence." Fed. R. Civ. P. 33(c). Accordingly, AMCO's reliance on interrogatory answers to deny coverage is analogous to the scenario in *Haarstad v. Graff*, 517 N.W.2d 582 (Minn. 1994). In that case, the insurer determined that its policy's intentional-act exclusion

negated its duty to defend and based this determination on its interview of the insured. *Id.* at 584. On appeal, the Minnesota Supreme Court approved the insurer's reliance on this interview as "actual facts" outside the complaint upon which the insurer could rely to deny duty-to-defend coverage. *Id.* at 584–85. The Minnesota Supreme Court's rationale in *Haarstad* applies here with equal vigor. Indeed, in the instant case, AMCO relied on the *sworn* interrogatory answers as actual facts, whereas, in *Haarstad*, the insurer relied not on sworn interrogatories or deposition testimony elicited by an adverse party, but on an unsworn interview that *it* conducted as part of its own investigation. *Id.* at 584. The only aspect of 3M's interrogatory answers that militate against their constituting "actual facts" is 3M's disclaimer in one of its answers that "[a]ll these interrogatories are contention interrogatories, and discovery is just beginning." Still, this disclaimer alone would not affect the answers' future admissibility. Accordingly, the district court did not err in approving AMCO's reliance—and in relying itself—on 3M's interrogatories as a source of actual facts outside the complaint to make coverage determinations.

Nevertheless, AMCO and the district court *did err* in concluding that 3M's interrogatory answers had the effect of triggering the Policy's knowledge-of-falsity exclusion such that AMCO owed no duty to defend ITI against 3M's suit. Again, in Minnesota,

> it is apparent that an insurer seeking to avoid having to defend an insured carries the burden of demonstrating that *all parts* of the cause of action against the insured *fall clearly outside the scope of coverage*. If any part is arguably within the scope of coverage, the insurer should defend, reserving its right to contest coverage based on facts developed at trial on the merits.

*Farmers & Merchs. State Bank*, 242 N.W.2d at 843 (emphases added) (quotation and citation omitted).

-9-

The district court's analysis fails to account for this feature of Minnesota law which requires that AMCO clearly demonstrate that it owes no duty to defend "*all parts*" of the 3M suit. *Id.* If any one claim of the 3M suit is arguably covered, AMCO must defend the whole suit. Specifically, the two interrogatory answers upon which the district court relied do not reflect that 3M alleged ITI's knowledge of falsity *as to all* the purportedly unfair advertising. Interrogatory Number 14 asked 3M only to "describe all facts supporting your allegation *in paragraph 13* of your Complaint that: 'ITI's product packaging and comparative advertising campaign are false and misleading in other respects as well, in that ITI has made other claims about companies' tapes that are incorrect and unsubstantiated.'" (Emphasis added.) To this, 3M responded that *certain photos* plainly had been manipulated. Similarly, in its answer to Interrogatory Number 19, 3M responded that "[i]t is apparent that, rather than use an 'actual photo' of 3M tape, ITI manipulated a tape image by, among other things, replicating a photo to create a repeating pattern. *Such replication could only occur through intent to deceive.*" (Emphasis added.)

In sum, both of these interrogatory answers concern 3M's allegations—mostly in Paragraph 13 of its complaint— that the purported "actual photos" of 3M products that ITI used in its packaging and comparative advertisements were inaccurate. However, as stated earlier, these allegations are not the *only* ITI conduct that 3M alleges violated the Lanham Act. Notably, in paragraph 12(c) of its complaint, 3M alleged that what renders ITI's advertising unfair and false is that "ITI's purported depictions of 3M Tape in print and video advertising do not accurately depict the performance of 3M Tape under conditions similar to typical usage in the marketplace or under any test protocol sufficiently reliable or scientific to support ITI's claims." Similarly, in subsection (e) of the same paragraph, 3M alleged that,

> [a]mong the varied respects in which ITI's testing deviates from conditions representative of typical applications include its use of application techniques different than those used in typical applications, its use of uncommon or limited purpose paints such as very low-

viscosity paints, and its depictions of paint line results from application of tape to atypical surfaces.

In short, 3M's complaint alleged that ITI committed unfair advertising under the Lanham Act in two separate regards: (1) by doctoring purported "actual photos" of 3M Tape—conduct which most naturally implies intent, and (2) by failing to ensure the accuracy of its market data by following the scientific method and other best practices when conducting comparative tests and experiments on 3M Tape—conduct which may be intentional *or* merely negligent. The distinction is meaningful. Indeed, as the Minnesota Supreme Court has stated, "the [lower court] mistakenly focused on some of the *conduct* being asserted to prove the *claim*." *Meadowbrook, Inc.*, 559 N.W.2d at 420.

To prevail on an unfair-competition claim under the Lanham Act, a plaintiff need not prove that a defendant knew that its advertisements were false. The district court thus focused on some of the conduct alleged to prove the claim rather than the global claim itself. Count One of 3M's lawsuit alleged that ITI's conduct "constitute[d] false advertising, in violation of Lanham Act § 43(a), 15 U.S.C. § 1125(a)." As several of our sister circuits have recognized, "[i]t is well-settled that no proof of intent or willfulness is required to establish a violation of Lanham Act § 43(a) for false advertising." *Vector Prods., Inc. v. Hartford Fire Ins. Co.*, 397 F.3d 1316, 1319 (11th Cir. 2005) (citing, *inter alia*, *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186 (2nd Cir. 1980); *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641 (3rd Cir. 1958)). Indeed, 3M likely alleged that ITI *willfully* used false advertising only to support its request in paragraph 17 of its complaint for enhanced damages under 15 U.S.C. § 1117(a), which entitles a plaintiff who proves certain willful violations of the Lanham Act to "(1) [the] defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." Accordingly, because AMCO failed to satisfy its burden of demonstrating as a matter of law that *all* of 3M's claims against

ITI *clearly fell outside* of the Policy's coverage, the district court's summary judgment concluding that AMCO owed ITI no duty to defend was improper.

Finally, the district court and AMCO's reliance on this court's opinion in *Callas Enterprises, Inc. v. Traveler's Indemnity Co. of America*, 193 F.3d 952 (8th Cir. 1999), is misplaced. In *Callas Enterprises*, this court, applying Minnesota insurance law, construed an identically worded knowledge-of-falsity exclusion. *See id.* at 955 (reciting the knowledge-of-falsity exclusion's language). Specifically, this court opined—as an alternative to other dispositive holdings—that the policy's knowledge-of-falsity exclusion relieved the insurer of its duty to defend a defamation claim, explaining its reasoning in a concluding footnote:

> The underlying complaint filed by Sbemco against Callas . . . does not specifically allege that Callas knowingly made false oral or written publication of material. However, each of the nine claims for release begins with a sentence which realleges, *inter alia*, paragraph 1 of the complaint, also referred to as the "preliminary statement." In that statement, the following allegation is made:
>
>> Moreover, Defendant engaged in deceptive trade practices using "bait and switch tactics" in breaching its agreement with Sbemco—Defendant solicited Sbemco customers showing the customers samples of Sbemco custom safety floor matting and obtaining orders from these customers of Sbemco custom safety floor matting but actually selling the customers either non-Sbemco floor matting or a different type of Sbemco floor matting than that shown to the customer.
>
> *It would defy logic to interpret this language as alleging anything other than that Callas acted falsely and with knowledge of that falsity.*

*Id.* at 957 n.5 (emphasis added).

-12-

We do not consider *Callas Enterprises* dispositive of the instant appeal. *Callas Enterprises* is factually distinguishable as well. The blatant "bait and switch" scheme at play in *Callas Enterprises* is not present here; rather, as already explained, the false advertising that ITI allegedly perpetrated could have been willful or simply negligent, in which case the Policy's knowledge-of-falsity exclusion does not operate to bar coverage.

In sum, AMCO failed to satisfy its burden of demonstrating, as a matter of law, that every claim in 3M's complaint fell clearly outside the Policy's coverage. *Farmers & Merchs. State Bank*, 242 N.W.2d at 843. Accordingly, because 3M alleged at least one arguably coverable claim, AMCO owed ITI a duty under Minnesota law to defend the entire suit. *Id.*

## III. *Conclusion*

Based on the foregoing, we reverse the district court's grant of summary judgment and remand for further proceedings consistent with this opinion.

_____