# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-3804

_____

Westfield Insurance Company

*Plaintiff - Appellee*

v.

Robinson Outdoors, Inc.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 18, 2012
Filed: November 30, 2012

_____

Before MURPHY, BYE, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Robinson Outdoors, Inc. ("Robinson") marketed and sold camouflage products that, according to Robinson, would eliminate human scent so that wild game, with their acute sense of smell, would not be able to detect a hunter's presence. Consumers who had purchased these products brought class action lawsuits against Robinson, claiming that Robinson's products did not actually eliminate human odor (collectively, "the underlying lawsuits"). Robinson sought defense and

indemnification from its insurer, Westfield Insurance Company ("Westfield"), but Westfield declined coverage. Instead, Westfield brought this action, seeking a declaratory judgment that the policy did not cover the underlying lawsuits. The district court[1] granted summary judgment in Westfield's favor, and we affirm.

I.

Robinson purchased two insurance policies from Westfield that provided coverage for 2005 and 2006, part of the time period at issue in the underlying lawsuits.[2] These insurance policies included coverage for "personal and advertising injury." A "personal and advertising injury" was defined to include a publication that "disparages a person's or organization's goods, products or services," as well as "the use of another's advertising idea in [Robinson's] 'advertisement.'" These policies excluded claims "arising out of the failure of goods, products or services to conform with any statement of quality or performance made in [Robinson's] 'advertisement.'"

In 2009, consumers in several jurisdictions sued Robinson claiming that Robinson misrepresented the attributes of its scent-eliminating hunting clothing. Robinson sought defense and indemnification from Westfield based on the insurance policies, but Westfield refused to defend or indemnify Robinson in the underlying lawsuits. Westfield informed Robinson that the insurance policies did not cover the underlying lawsuits because (1) the advertisements were first published before the policy period and (2) the claims in the underlying lawsuits were excluded under the failure-to-conform provision. Robinson later settled the underlying lawsuits and renewed its indemnification request. Westfield again refused to indemnify Robinson

---

[1] The Honorable John R. Tunheim, United States District Court for the District of Minnesota.

[2] For the purposes of this case, neither party contends that the relevant policy language differs between the 2005 policy and the 2006 policy.

and, in January 2010, brought this action seeking a declaratory judgment under 28 U.S.C. § 2201(a) contending that it has no duty to defend or indemnify Robinson because the applicable coverage terms, conditions, limitations, and exclusions outlined in the insurance policies did not extend to the underlying lawsuits.

The district court granted summary judgment in Westfield's favor. The court held that even if the claims in the underlying lawsuits were covered within the meaning of an advertising injury, the claims are excluded by the failure-to-conform provision. Robinson now appeals the district court's decision.

II.

On appeal, Robinson argues (1) the claims raised by the underlying lawsuits are within the insurance policies' scope of coverage and (2) even if coverage does not exist, Robinson is entitled to relief under the reasonable-expectations doctrine. We review de novo a district court's grant of summary judgment. Woods v. DaimlerChrysler Corp., 409 F.3d 984, 990 (8th Cir. 2005). Reviewing "the record in the light most favorable to the nonmoving party," id., we will affirm the grant of summary judgement "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).

A.

First, Robinson argues that summary judgment was improper because the claims brought in the underlying lawsuits are covered by the insurance policies and are not excluded by the failure-to-conform provision. Under Minnesota law,[3] "policy

---

[3]"[W]hen federal courts are exercising diversity jurisdiction, the rules for construing insurance policies are controlled by state law." Langley v. Allstate Ins.

words of inclusion" within an insurance contract are "broadly construed, and words of exclusion are narrowly considered." AMCO Ins. Co. v. Inspired Techs. Inc., 648 F.3d 875, 880 (8th Cir. 2011) (internal quotation marks omitted). Minnesota's "rules of insurance policy interpretation require policies to be read in favor of finding coverage, and require courts to look past the legal nomenclature to the underlying allegations." General Cas. Co. of Wis. v. Wozniak Travel, Inc., 762 N.W.2d 572, 576 (Minn. 2009).

An insured must initially establish that a claim is covered by its insurance policy. Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co., 819 N.W.2d 602, 617 (Minn. 2012). After the insured has met this burden, however, the burden shifts to the insurer to prove an exclusion within the policy applies.[4] Id. To determine if a duty to defend or indemnify exists, a court compares the allegations in the complaint of the underlying action against the relevant language in the insurance policy. Meadowbrook, Inc. v. Tower Ins. Co., 559 N.W.2d 411, 415 (Minn. 1997).

We will assume, without deciding, that the claims in the underlying lawsuits are covered by the insurance policies because even if Robinson could prove the underlying lawsuits were covered, we hold the exclusion provision precludes coverage. The policies do not cover claims "arising out of the failure of goods, products or services to conform with any statement of quality or performance made

---

Co., 995 F.2d 841, 844 (8th Cir. 1993). Both parties agree that Minnesota law applies.

[4]Robinson argues that the district court erred by placing the initial burden of establishing coverage on Robinson, and only then required Westfield to demonstrate that coverage was excluded under the policy. The district court, however, correctly applied the burden-shifting framework established by the Minnesota Supreme Court, see Remodeling Dimensions, 819 N.W.2d at 617, and held that Robinson did not establish that coverage existed, and even if it could, the failure-to-conform provision would absolve Westfield of any duty under the policies.

in [Robinson's] 'advertisement[s].'" These "[i]nsurance contract exclusions are construed strictly," see Thommes v. Milwaukee Ins. Co., 641 N.W.2d 877, 880 (Minn. 2002), and narrowly against the insurer, see AMCO, 648 F.3d at 880. But the "exclusions in a policy are as much a part of the contract as other parts thereof and must be given the same consideration in determining what is the coverage." Lobeck v. State Farm Mut. Auto. Ins. Co., 582 N.W.2d 246, 249 (Minn. 1998) (internal alteration and quotation marks omitted). Any ambiguity in an insurance policy's exclusions "must be construed in favor of the insured," but clear and unambiguous language in a contract is given its ordinary meaning. Noran Neurological Clinic, P.A. v. Travelers Indem. Co., 229 F.3d 707, 709 (8th Cir. 2000) (internal quotation marks omitted) (applying Minnesota law).

Robinson argues that the exclusion provision should not apply because it is ambiguous. But "[i]nsurance policy provisions are ambiguous only when they are reasonably subject to more than one interpretation." Latterell v. Progressive N. Ins. Co., 801 N.W.2d 917, 920 (Minn. 2011) (internal quotation marks omitted). A plain reading of the failure-to-conform provision is not reasonably subject to more than one interpretation; further, Robinson does not articulate how the provision is subject to multiple interpretations. Rather, the exclusion clause directly applies to Robinson's conduct—Robinson marketed goods and was then sued because the goods did not conform to promises regarding their performance.

Next, according to Robinson some of its advertisements were either "literally true" or ambiguous and do not represent a specific degree of quality or performance. As a result, Robinson contends that at least some of the misleading advertisements do not fall within the scope of the failure-to-conform provision because they do not make a "statement of quality or performance." These allegations in the underlying lawsuits highlighted by Robinson merely provide a background to Robinson's misleading marketing tactics, not an individual or separate basis for a claim. The underlying lawsuits allege that Robinson misled consumers into buying hunting

clothing that did not perform as it was advertised. The thrust of the consumers' claims was that Robinson sold hunting clothing that was advertised to eliminate human odor, but did not.

The failure-to-conform provision in the insurance polices precludes coverage in this case because it captures all of the legal claims asserted by the consumers in the underlying lawsuits. Therefore, the district court correctly held that Westfield was under no obligation to defend or indemnify Robinson in the underlying lawsuits.

B.

Finally, Robinson argues that the doctrine of reasonable expectations governs this dispute, regardless of whether the underlying lawsuits are covered by the insurance policies. The doctrine applies to situations of ambiguity and "where a party's coverage is significantly different from what the party reasonably believes it has paid for and where the only notice the party has of that difference is in an obscure and unexpected provision." Carlson v. Allstate Ins. Co., 749 N.W.2d 41, 49 (Minn. 2008). Robinson did not make this argument in the district court and may not raise an issue for the first time on appeal as a basis for reversal. See Von Kerssenbrock-Praschma v. Saunders, 121 F.3d 373, 375 (8th Cir. 1997). As a result, we decline to consider Robinson's argument premised on the reasonable-expectations doctrine.

III.

For the above reasons, we affirm the district court.

_____