# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 09-3647

_____

FACE, Festivals and Concert Events,
Inc.,

        Appellant,

    v.

Scottsdale Insurance Company,

        Appellee.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
District of Minnesota.

_____

Submitted: October 21, 2010
Filed: February 14, 2011

_____

Before LOKEN, SMITH, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Festivals and Concert Events, Inc. ("FACE") appeals from the district court's[1] grant of summary judgment for Scottsdale Insurance Company ("Scottsdale"). FACE filed this declaratory judgment action, seeking defense costs and indemnity in its underlying lawsuit with D.D.N. Because we conclude that no claim in the underlying suit was arguably within the policy coverage, we affirm.

_____

[1]The Honorable Michael J. Davis, Chief Judge, United States District Court for the District of Minnesota.

I.

FACE purchased a commercial general liability policy from Scottsdale that covers the period from May 1, 2006, until May 1, 2007. The policy covered damages that the insured became legally obligated to pay because of "bodily injury" that is caused by an "occurrence." The policy granted Scottsdale the right and duty to defend FACE against any suit seeking covered damages.

The underlying lawsuit arose out of FACE's involvement as a promoter of WE Fest, an annual country music festival held in Detroit Lakes, Minnesota. FACE hired Eric Fanning to provide security services at the 2006 WE Fest, which took place during August 3-5, 2006. Fanning gave D.D.N. her tickets and wristband for the festival. D.D.N. claims that Fanning sexually assaulted her on August 5, 2006, on the festival premises.

D.D.N. brought suit against FACE and the security company in charge of securing the festival grounds, Security Specialists, Inc. She asserted claims against FACE for negligent hiring, negligent supervision, negligent retention, respondeat superior, negligent infliction of emotional distress, and landowner's negligence. FACE tendered the defense of the suit to Scottsdale, but Scottsdale denied the claim based on a policy exclusion concerning injuries arising from assault and battery. After the denial, FACE filed this action seeking indemnity and defense costs under the policy.

During the underlying trial, FACE denied that a sexual assault occurred. The jury, through a special verdict form, found that Fanning had committed a sexual battery on D.D.N., and that FACE was liable for negligent hiring. The jury awarded D.D.N. total damages of $750,000, and apportioned 42.5 percent of the fault to FACE. After the verdict, FACE withdrew its indemnity claim, but it continues to seek defense costs.

The district court granted summary judgment for Scottsdale, concluding that D.D.N.'s allegations were not within the scope of coverage. Summary judgment is appropriate if there is no genuine issue of material fact for trial. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). We review both the district court's interpretation of provisions in an insurance contract and its decision to grant summary judgment *de novo*. *Transcon. Ins. Co. v. W.G. Samuels Co.*, 370 F.3d 755, 757 (8th Cir. 2004).

## II.

The parties agree that Minnesota law governs this diversity action. Under Minnesota law, an insurer's obligation to defend is contractual. *Meadowbrook, Inc. v. Tower Ins. Co.*, 559 N.W.2d 411, 415 (Minn. 1997). The insured bears the initial burden of establishing coverage, and the insurer carries the burden of demonstrating that a policy exclusion applies. *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006). When interpreting an insurance contract, the language should be given its plain and ordinary meaning, and any ambiguity should be resolved in favor of the insured. *Id.*

The duty to defend is broader than the duty to indemnify. *Meadowbrook*, 559 N.W.2d at 415. In determining whether a duty to defend exists, we look at the duty as of the time the insured tendered the defense to the insurer. *Jostens, Inc. v. Mission Ins. Co.*, 387 N.W.2d 161, 166 (Minn. 1986). This duty arises if any part of the cause of action is arguably within the scope of policy coverage. *Id.* at 165. Absent any knowledge to the contrary, an insurer may make an initial determination of whether it has a duty to defend from the factual allegations in the complaint. *Garvis v. Emp'rs Mut. Cas. Co.*, 497 N.W.2d 254, 258 (Minn. 1993). "Where the pleadings do not raise a claim arguably within the scope of coverage, the insurer has no duty to defend or investigate further to determine whether there are other facts present which trigger such a duty." *Id.* The insurer may not simply rely on the pleadings, however, if it has

independent knowledge of facts that indicate there may be a covered claim, or if the insured tells the insurer of such facts. *Id.*

The policy in this case covers damages that the insured becomes legally obligated to pay because of "bodily injury" that is caused by an "occurrence." It grants Scottsdale the right and duty to defend FACE against any suit seeking covered damages, but states that Scottsdale does not have a duty to defend "against any 'suit' seeking damages for 'bodily injury' . . . to which [the] insurance does not apply." The policy contains an exclusion, described by the parties as the "assault and battery exclusion," that provides:

> This Insurance does not apply to "Injury" . . . arising from:
>
> 1. Assault and/or Battery committed by any Insured, any employee of any Insured, or any other person;
>
> 2. The Failure to suppress or prevent Assault and/or Battery by any person in 1. above;
>
> 3. The selling, serving or furnishing of alcoholic beverages which results in an Assault and/or Battery.
>
> 4. The negligent:
>
>> a. Employment;
>>
>> b. Investigation;
>>
>> c. Supervision;
>>
>> d. Reporting to the proper authorities, or failure to so report; or
>>
>> e. Retention

by a person for whom any Insured is or ever was legally responsible and whose conduct would be excluded by paragraphs 1, 2 or 3 above.

The district court determined that because FACE's only potential liability to D.D.N. was within the scope of this exclusion, Scottsdale had no obligation to defend FACE.

FACE argues that the district court erred, because the exclusion in this policy applies only to injuries arising from an "Assault and/or Battery *committed by* any Insured, any employee of any Insured, or any other person," and Scottsdale had reason to know that Fanning had not "committed" an assault on D.D.N. The difficulty with this contention is that whether or not Fanning "committed" an assault, there was no possibility of coverage under the policy. If Fanning did commit an assault, then the assault and battery exclusion applied to defeat coverage. *See, e.g.*, *Ross v. City of Minneapolis*, 408 N.W.2d 910, 913-14 (Minn. App. 1987). If Fanning did not commit an assault, then FACE was not legally obligated to pay damages to D.D.N., and coverage was not implicated. There was no potential outcome of the trial that would require Scottsdale to indemnify FACE, and the insurer thus had no duty to defend. *See Bobich v. Oja*, 104 N.W.2d 19, 25 (Minn. 1960).

FACE responds by urging that *Crum v. Anchor Casualty Co.*, 119 N.W.2d 703 (Minn. 1963), upheld a duty to defend under analogous circumstances. In *Crum*, a tenant in an apartment building brought a claim under the Workmen's Compensation Act against her landlords arising from injuries when she fell down a stairway in the building. The tenant was also an employee of the landlords. The insurer for the landlords refused to defend the action on the ground that its policy excluded coverage for injuries to an employee who has rights under the Workmen's Compensation Act.

The Supreme Court of Minnesota held that the insurer did have a duty to defend the landlords, because the insurer knew – contrary to the tenant's amended complaint – that the tenant was not acting within the scope of her employment when

she sustained her injuries, and that the exclusion therefore did not apply. *Id.* at 712. In that instance, the insurer had knowledge that "the actual facts are such as to bring the cause of action – if it can be established at all – within the insurance coverage." *Id.* at 708. Although the tenant's amended complaint had omitted a negligence claim against the landlords, the court explained that "the amendment of pleadings is liberally allowed even after judgment has been entered." *Id.* at 710. *Crum* was a case, therefore, in which the insured had potential liability in the lawsuit covered under its policy, and the insurer knew it, so there was a duty to defend. The Minnesota court expressly distinguished the situation in which an insured has no potential covered liability, and the insurer thus has no duty to defend. *Id.* at 708-09 (citing *Bobich*, 104 N.W.2d at 25).

FACE separately contends that Scottsdale's treatment of another claim involving an alleged assault by a WE Fest employee at WE Fest is an "admission against interest" that precluded summary judgment. The other claim involved an assault of a patron, Tollefson, by a WE Fest employee who claimed that he acted in self-defense. Scottsdale settled the claim, and contemporaneous notes of an insurance adjuster said "it appears that the A[ssault] & B[attery] exclusion will not apply in this case as [the insured's] actions were in self defense." Scottsdale now says that coverage could have been denied, because there is no self-defense exception to the assault and battery exclusion. Whatever the merits of the Tollefson claim, the insurer's treatment of that matter cannot override the unambiguous terms of the insurance policy at issue in this case. *See United Fire & Cas. Co. v. Maw*, 510 N.W.2d 241, 244 (Minn. Ct. App. 1994). Extrinsic evidence, such as an adjuster's notes, cannot be used to "construe" unambiguous policy language. *See In re SRC Holding Corp.*, 545 F.3d 661, 668 (8th Cir. 2008); *Donnay v. Boulware*, 144 N.W.2d 711, 716 (Minn. 1966). Scottsdale's treatment of the Tollefson claim does not affect our analysis of the exclusion in this case.

FACE has failed to establish a potential liability covered under the policy.  It is therefore not entitled to defense costs in the underlying litigation.

*     *     *

For the foregoing reasons, the judgment of the district court is affirmed.

_____