# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 12-2822

———————————————

PETCO Animal Supplies Stores, Inc.; International Pet Supplies and Distribution, Inc.,

*Plaintiffs - Appellants*,

v.

Insurance Company of North America,

*Defendant - Appellee*.

——————————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

——————————

Submitted: March 13, 2013
Filed: August 1, 2013

——————————

Before WOLLMAN, BYE, and COLLOTON, Circuit Judges.

——————————

COLLOTON, Circuit Judge.

PETCO Animal Supplies Stores, Inc., appeals from a grant of summary judgment by the district court[1] in favor of Insurance Company of North America

---

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota, adopting the report and recommendation of the Honorable Janie S. Mayeron, United States Magistrate Judge for the District of Minnesota.

("ICNA"). PETCO sought a declaration that ICNA was obliged to defend and indemnify the company in its underlying litigation with Medtronic, Inc. We affirm.

I.

Meiko Pet Corporation purchased a products liability insurance policy from ICNA that was effective from September 20, 2006, to September 20, 2007. The policy extended coverage to the vendors of Meiko's products, including PETCO and its subsidiaries. The policy required ICNA to defend and indemnify any insured party in the event of a covered "occurrence" causing "property damage."

On May 20, 2007, an aquarium heater malfunctioned at a Medtronic plant and started a fire. Medtronic sued PETCO, from whom it had purchased the heater, seeking approximately $1,800,000 in damages. PETCO tendered the defense of the action to ICNA, but ICNA denied the claim, and PETCO sued the insurance company. PETCO sought a declaration that it was entitled to defense costs and indemnity in the Medtronic action. The underlying action was later settled, with an agreement that PETCO would assign its claims against ICNA to Medtronic. *See Miller v. Shugart*, 316 N.W.2d 729, 734 (Minn. 1982).

ICNA moved for summary judgment, and the district court granted the motion, concluding that PETCO had failed to prove that the policy covered the damage caused by the aquarium heater. Summary judgment is appropriate when there is no genuine issue of material fact for trial. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). We review *de novo* the district court's interpretation of the insurance contract and its decision to grant summary judgment. *FACE, Festivals & Concert Events, Inc. v. Scottsdale Ins. Co.*, 632 F.3d 417, 419 (8th Cir. 2011).

II.

This appeal turns on whether the aquarium heater satisfied a condition precedent to coverage under the policy. The relevant portion of the policy, entitled "Products Warranty," provides as follows: "It is warranted, and a condition precedent to recovery hereunder, that Air Pumps, Heater, Filters, Heating Stone, Heated Mat, Heated Bowl and Heated Bucket are UL/CSA approved and/or complied with the mandatory and/or voluntary safety standards of importing countries." The parties agree that the heater was not "UL/CSA approved," so ICNA was obliged to defend and indemnify PETCO only if the heater complied with "the mandatory and/or voluntary safety standards" of the United States. The parties further agree that the condition precedent is disjunctive, so PETCO satisfied the condition if the heater complied with either the mandatory or the voluntary safety standards of the United States.

The district court granted summary judgment for ICNA on the ground that PETCO failed to identify any mandatory or voluntary safety standard with which the heater complied. PETCO appeals, arguing that the district court misinterpreted the phrase "voluntary safety standards" and also failed to recognize that the heater complied with the mandatory standards of the United States.

In this diversity action, Minnesota law governs the interpretation of the policy. *Langley v. Allstate Ins. Co.*, 995 F.2d 841, 844 (8th Cir. 1993). The party claiming coverage bears the burden of proof, so PETCO must establish a "prima facie case of coverage." *Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 705 (Minn. 2013) (internal quotation omitted). Under the policy in this case, PETCO must show that the heater satisfied the condition precedent of the Products Warranty.

PETCO contends that the phrase "voluntary safety standards" is ambiguous, and thus should be construed in favor of coverage. Because "voluntary" means

-3-

"proceeding from the will or from one's own choice or consent," Appellant's Br. 9, PETCO maintains that a "voluntary safety standard" reasonably could be interpreted to mean a standard that is "optional." On this view, PETCO is entitled to coverage even if the heater did not comply with any voluntary standard, because a voluntary standard is satisfied whether or not one chooses to comply with it. Thus, the argument goes, the district court erred by interpreting the policy to require compliance with *some* safety standard.

PETCO's interpretation of the phrase "voluntary safety standard" in this insurance contract is not reasonable. "A contract must be interpreted in a way that gives all of its provisions meaning." *Current Tech. Concepts, Inc. v. Irie Enters., Inc.*, 530 N.W.2d 539, 543 (Minn. 1995). The "voluntary safety standards" of an importing country presumably are not enforceable *by the government* of the importing country if the manufacturer of a product chooses not to comply with the standards. But parties to a contract can choose to require compliance with a standard that is otherwise optional, and they have done so here. The condition precedent in ICNA's insurance policy provides that coverage will apply only where the insured has "complied" with the mandatory or voluntary safety standards of the importing country. On PETCO's reading, the condition precedent would not be a condition at all: PETCO would be covered by the policy whether or not it chose to comply with a voluntary safety standard. Because the condition would require nothing, no insured party could fail to satisfy it, and the Products Warranty would be superfluous. Read naturally, and in a manner that gives the condition meaning, the Products Warranty unambiguously requires that the heater comply with an external standard. PETCO has not identified any voluntary standard with which the heater complied, so its claim for coverage on that basis must fail.

PETCO argues alternatively that the heater complied with the mandatory standards of the United States. Relying on the following statement from guidelines of United States Customs and Border Protection, the company contends that Customs

authorities would have seized the heater if it did not comply with the government's mandatory safety standards: "Any consumer product offered for importation will be refused admission and/or seized if the product fails to comply with an applicable safety standard or regulation . . . ." U.S. Customs and Border Protection, Importing into the United States: A Guide to Commercial Importers, CBP Pub. No. 0000-0504, at 115 (2006). Because the heater was admitted to the country and not seized by Customs authorities, PETCO concludes that the heater must have complied with the mandatory standards of the United States.

Although Customs authorities did not seize the heater, it does not follow that the heater necessarily complied with mandatory safety standards of the United States. The Customs guide provides that an item will be refused admission or seized if it does not comply with "an applicable safety standard." It is possible, however, that no particular safety standard applies to aquarium heaters, or that the heater did not comply with an applicable standard and Customs failed to seize it. It is PETCO's obligation under the policy to identify a mandatory safety standard with which the heater complied, and it has failed to do so.

*  *  *

The judgment of the district court is affirmed

_____