# United States Court of Appeals

### For the Eighth Circuit

_____

No. 23-1328

_____

Dexon Computer, Inc.

*Plaintiff - Appellee*

v.

Travelers Property Casualty Company of America

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: October 19, 2023
Filed: May 20, 2024

_____

Before SMITH, Chief Judge,[1] LOKEN and COLLOTON,[2] Circuit Judges.

_____

LOKEN, Circuit Judge.

---

[1]Judge Smith completed his term as chief judge of the Circuit on March 10, 2024. See 28 U.S.C. § 45(a)(3)(A).

[2]Judge Colloton became chief judge of the Circuit on March 11, 2024. See 28 U.S.C. § 45(a)(1).

Dexon Computer, Inc. (Dexon), is a reseller of computer networking products. Dexon sources new and used brand name products from many different suppliers, including Cisco, Hewlett Packard, Juniper, and Dell; subjects the products to quality control measures; and resells them to its customers. In July 2020, Cisco Systems, Inc. and Cisco Technologies, Inc. (together, Cisco), sued Dexon in the Northern District of California (the Cisco Action). Cisco's complaint included claims of federal trademark infringement and counterfeiting in violation of the Lanham Act, 15 U.S.C. § 1114. The complaint recited alleged trademark infringements between 2006 and 2010 that were the basis of a previous suit dismissed with prejudice in 2011, and then alleged some thirty-five acts of infringement between 2015 and 2020. For each act, the complaint named the recipient of the allegedly counterfeit Cisco product, the number of allegedly counterfeit products Dexon sold to the recipient on that occasion, the product code associated with each product, and the date of the transaction.

Dexon tendered defense of the Cisco Action to Travelers Property Casualty Company of America (Travelers) under the claims made liability policy Dexon purchased from Travelers for the period May 18, 2020 to May 18, 2021 (the Policy). Travelers denied coverage and a duty to defend the Cisco Action. Dexon filed this action in the District of Minnesota, seeking a declaratory judgment that Travelers has a duty to defend and indemnify. Travelers moved to dismiss the complaint. The district court[3] denied the motion to dismiss these claims. Travelers timely appeals the ensuing Order for Judgment, arguing the district court erred in concluding Travelers had a duty to defend the Cisco Action and in granting a consent judgment in favor of Dexon. Interpreting the insurance policy *de novo*, we affirm.

---

[3]The Honorable Patrick J. Schiltz, Chief Judge of the United States District Court for the District of Minnesota.

## I. Background and Procedural History

The Policy includes a Communications and Media Liability Coverage section covering losses caused by a "'communications and media wrongful act' committed anywhere in the world." It defines these wrongful acts to include acts of trademark infringement, provided the wrongful act "was committed on or after the Communications and Media Retroactive Date shown in the CyberFirst Declarations and before the end of the policy period." The Policy's Retroactive Date is May 18, 2019. The Policy also includes a "prior acts" or "retroactive date" provision:

> Each "communications and media wrongful act" in a series of "related" "communications and media wrongful acts" will be deemed to have been committed on the date the first "communications and media wrongful act" in that series is committed.

The Policy defines "related" to mean "connected, tied or linked by any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes."

Thirteen of the specific acts of infringement alleged in the Cisco complaint took place during the Policy period. In denying Dexon's tender of defense, Travelers claimed that all the alleged acts of trademark infringement are "related acts" under the Policy and thus are deemed to have been committed on the date of the first alleged infringement, well before the Policy's Retroactive Date. Dexon responded, disputing the denial of coverage. Dexon provided Travelers additional information about the suppliers from whom Dexon sourced the allegedly counterfeit products. Dexon noted that no two acts of alleged infringement involved the same or related suppliers, Dexon had worked with one supplier for over twenty years without incident, and, prior to the Cisco Action, Dexon had received no claims involving products sourced from these suppliers.

-3-

Travelers adhered to its denial of coverage. Dexon sued for a declaratory judgment of coverage and a duty to defend plus damages for breach of contract and bad faith. Travelers moved to dismiss, and the parties briefed their conflicting interpretations of the related acts provision. Travelers provided copies of the Cisco complaint and the Policy. Dexon provided its Amended Answer in the Cisco Action, its two letters to Travelers tendering defense of the Cisco Action, and evidence Cisco's 2011 lawsuit was dismissed.

After a lengthy motion hearing, the district court granted Travelers' motion in part. The court dismissed the bad faith claim for failure to state a claim, consistent with Dexon's concession at oral argument. However, the court denied the motion to dismiss Dexon's claims for a declaratory judgment that Travelers has a duty to defend and indemnify Dexon in connection with the Cisco Action. Initially, the court held that the documents submitted by the parties concerning the coverage dispute are not "matters outside the pleadings" and therefore may be considered in ruling on the motion to dismiss. See Zean v. Fairview Health Servs., 858 F.3d 520, 526 (8th Cir. 2017). Applying Minnesota law, the court held that Travelers must defend the entire action "[i]f any part of any claim asserted in the Cisco Action is even 'arguably' within the scope of coverage."

Turning to Travelers' reliance on the "related acts" provision in the Policy, the court observed that relatedness "is a nebulous concept," and both parties agree that the Policy definition of related "cannot be applied literally" because "*every* claim that any litigant has ever made against Dexon is 'linked' by the 'fact' that the claims were made against Dexon." Therefore, the issue "is whether each of the infringing acts alleged in the underlying Cisco Action is related *enough* to an infringing act that occurred prior to the Retroactive Date" -- "such questions of degree are difficult to answer without a fully developed factual record."

The court noted that, in tendering defense of the Cisco Action, Dexon informed Travelers "that the allegedly counterfeit products cited by Cisco in its complaint were (1) different products (2) that had been purchased at different times (3) from different sources (4) by different Dexon employees and then (5) sold to different customers." Given the information that Dexon provided to Travelers, the court concluded that it "cannot hold, as a matter of law, that every act of trademark infringement alleged in the Cisco complaint is *necessarily* related to an act of trademark infringement that occurred prior to the Retroactive Date. . . . [I]f even *one* of the post-Retroactive Date acts of infringement is even *arguably* unrelated to any pre-Retroactive Date act of infringement, Travelers owes Dexon a defense." Cisco's allegations of "longstanding 'counterfeit trafficking schemes' is largely irrelevant to its legal claims against Dexon," and the allegation "finds almost no factual support in the complaint."

Six months after this ruling, the parties filed a Stipulation for Entry of Final Judgment and for the Dismissal Without Prejudice of Certain Claims Pursuant to FRCP 41. The parties stipulated to entry of judgment in favor of Dexon and against Travelers for costs related to Travelers' duty to defend. Dexon agreed to dismiss without prejudice its claims for indemnification, "specifically preserving all future claims for indemnity against Travelers relative to the claims asserted against Dexon by Cisco in the *Cisco* Action." Travelers "reserve[d] all rights on appeal . . . as to whether . . . Dexon established that Travelers owes a duty to defend Dexon under the Policy." The Stipulation stated that Travelers intended to "take an immediate appeal." The parties also filed a Proposed Order in "accordance with, and subject to, the terms of the [Stipulation]."

The next day, the district court entered a signed Order for Judgment, adopting verbatim the parties' proposed order. The Clerk of Court entered judgment in favor of Dexon. This appeal of the court's duty-to-defend ruling followed.[4]

## II. Discussion

We review *de novo* the district court's denial of a motion to dismiss a diversity action and its interpretation of state law. Simmons Foods, Inc. v. Indus. Risk Insurers, 863 F.3d 792, 797 (8th Cir. 2017). The sole issue on appeal is whether Travelers had a duty to defend Dexon in the Cisco Action. The parties agree that Minnesota substantive law governs this issue. See Murray v. Greenwich Ins. Co., 533 F.3d 644, 648 (8th Cir. 2008).

---

[4]The parties intended the Order for Judgment to be an appealable final order to expedite appellate review of what might otherwise be an interlocutory ruling. "We have repeatedly condemned . . . attempts to manufacture jurisdiction because they undermine the final judgment rule." Clos v. Corr. Corp. of Am., 597 F.3d 925, 928 (8th Cir. 2010). The district court entered the proposed Order for Judgment. In this circuit, a decision is "final" when there is "some clear and unequivocal manifestation by the trial court . . . that the decision made, so far as [the court] is concerned, is the end of the case." Reinholdson v. Minnesota, 346 F.3d 847, 849 (8th Cir. 2003) (quotation omitted). Here, following entry of the Order for Judgment, the Clerk issued a "Judgment in a Civil Case" declaring that "a decision has been rendered" and reciting the judgment as set forth in the district court's order. This is "evidence of finality" that confirms the district court intended to end the case. See id. at 850. This was not the type of "conditional" dismissal that concerned us in Ruppert v. Principal Life Ins. Co., 705 F.3d 839, 842-43 (8th Cir.), cert. denied, 571 U.S. 825 (2013). It is often helpful to resolve a duty-to-defend suit between insured and insurer while the third-party action against the insured is still pending. Cf. Crum v. Anchor Cas. Co., 119 N.W.2d 703, 711-12 (Minn. 1963).

Under Minnesota law, an insurer's "duty to defend is different from and broader than an insurer's duty to indemnify." Id. As the Supreme Court of Minnesota has repeatedly explained:

> The duty to defend is broader than the duty to indemnify in three ways: (1) the duty to defend extends to every claim that "arguably" falls within the scope of coverage; (2) the duty to defend one claim creates a duty to defend all claims; and (3) the duty to defend exists regardless of the merits of the underlying claims [against the insured].

Wooddale Bldrs., Inc. v. Md. Cas. Co., 722 N.W.2d 283, 302 (Minn. 2006) (citation omitted). The duty to defend is a contractual obligation; "[w]hether an insurer has a duty to defend is a question of law." Murray, 533 F.3d at 648.

1. Travelers argues on appeal that, contrary to the district court's ruling, only the Cisco complaint can be considered in determining its duty to defend. But this ignores controlling Minnesota and Eighth Circuit precedents applying Minnesota law. As the Supreme Court of Minnesota explained decades ago:

> This court has consistently stated that where the insurer has no knowledge to the contrary, it may make an initial determination of whether or not it is obligated to defend from the facts alleged in the complaint against its insured. Where the pleadings do not raise a claim arguably within the scope of coverage, the insurer has no duty to defend or investigate further . . . .
>
> Of course, if the insurer is aware of facts indicating that there may be a claim, either from what is said directly or inferentially in the complaint, *or if the insured tells the insurer of such facts,* or if the insurer has some independent knowledge of such facts, then the insurer must either accept tender of the defense or further investigate the potential claim.

Garvis v. Emps. Mut. Cas. Co., 497 N.W.2d 254, 258 (Minn. 1993) (emphasis added; citations omitted). In FACE, Festivals & Concert Events, Inc. v. Scottsdale Insurance Co., 632 F.3d 417, 420 (8th Cir. 2011), citing Garvis, we held that "[t]he insurer may not simply rely on the [third-party] pleadings . . . if it has independent knowledge of facts that indicate there may be a covered claim, or if the insured tells the insurer of such facts." Travelers' contrary contention is without merit.

2. At oral argument (but not in its briefs), Travelers argued the district court committed an error of law when it ruled that, "if even *one* of the post-Retroactive Date acts of infringement is even *arguably* unrelated to any pre-Retroactive Date act of infringement, Travelers owes Dexon a defense." Even if preserved, this argument is completely without merit, as the above quotation from the opinion in Wooddale Builders makes clear. The Supreme Court of Minnesota held many years ago, "[i]f any part of a cause of action is arguably within the scope of coverage, the insurer must defend. . . . If the claim is not clearly outside coverage, the insurer has a duty to defend." Prahm v. Rupp Const. Co., 277 N.W.2d 389, 390 (Minn. 1979); see F.D. Chapman Constr. Co. v. Glen Falls Ins. Co., 211 N.W.2d 871, 872 (Minn. 1973) (concluding the insurer had a duty to defend because the third-party complaints "inferentially alleged a species of [covered] injury"); AMCO Ins. Co. v. Inspired Techs., Inc., 648 F.3d 875, 880-81 (8th Cir. 2011).

3. Travelers' primary argument on appeal is that the Policy defines "related acts" broadly, the allegations in the Cisco complaint control the issue, Cisco alleged a "unified, continuous counterfeit trafficking scheme spanning more than 15 years," and therefore "Cisco's allegations confirm that Dexon's infringing acts before and after the Policy's May 18, 2019 retroactive date are 'connected, tied or linked' by . . . a series of facts and transactions [that] . . . are deemed to have occurred prior to the retroactive date, foreclosing coverage."

(a)  In American Commerce Insurance Brokers, Inc. v. Minnesota Mutual Fire & Casualty Co., 551 N.W.2d 224 (Minn. 1996), the Supreme Court of Minnesota considered whether an employee's 155 acts of embezzlement were more than one "series of related acts," and therefore more than one covered "occurrence," under the employer's business insurance policy.  The Court initially held that, "as used in the policy in this case," the phrase "series of related acts" is not ambiguous even though "the word 'related' covers a broad range of connections;" the phrase "is intended to encompass a continuous embezzlement scheme in which the dishonest employee converts funds from an employer by a common scheme on a constant basis."  Id. at 228.  The Court concluded that the insured's employee embezzled funds by two different methods and therefore "as a matter of law that two occurrences arose under the circumstances of this case."  Id. at 231.

In Kilcher v. Continental Casualty Co., 747 F.3d 983 (8th Cir. 2014), we interpreted a similar "Interrelated Wrongful Acts" provision in a claims-made professional liability policy.  We reversed the district court's decision that the joint settlement of claims by four investors against their financial advisor for giving similar wrongful investment services resolved at least two separate claims, which subjected the insurer to the policy's aggregate coverage limit of $2 million, rather than the coverage limit of $1 million per claim.  Applying American Commerce, we held that the insured advisor's individual wrongful acts of offering unsuitable investments to each plaintiff and a claim of churning by one plaintiff were all interrelated under the policy, which defined "Interrelated Wrongful Acts" as "any Wrongful Acts which are logically or causally connected by reason of any common fact, circumstance, situation, transaction or event."  Id. 987-90.  "That [the advisor] harmed each Plaintiff individually and uniquely is not enough to overcome the Policy's broad language."  Id. at 990.  However, we recognized, "at some point a logical connection may be too tenuous reasonably to be called a relationship."   Id. at 989, quoting American Commerce, 551 N.W.2d at 228.

The related acts policy provisions at issue in <u>American Commerce</u> and in <u>Kilcher</u> may have been similarly worded to the Policy's "related acts" provision in this case, but the coverage issues were very different. In those cases, the issue was "not excluding coverage entirely but deciding only how to apply coverage limits." <u>USA Gymnastics v. Liberty Ins. Underwriters, Inc.</u>, 27 F.4th 499, 527 (7th Cir. 2022) (concluding this is a distinguishing factor when interpreting "related"). And the issue decided by the court was the duty to defend the Cisco complaint, not the extent of the duty to indemnify. As the district court observed during the motions hearing:

> As I understand the law, when you look at the four corners of the [third-party] complaint and essentially only two things can happen: either the [insured] is going to be found . . . not liable so there will be nothing to indemnify or if the [insured] is found liable, there will necessarily be no coverage . . . . it's either no liability or uncovered liability. . . . The judge on the 12(b)(6) motion in the coverage action can say no duty to defend.
>
> But where you look at the four corners of the complaint and there's three possible options in the underlying action -- no liability on the insured's part so nobody to indemnify, liability that is uncovered or liability that is covered, then there is a duty to defend.
>
> I think we have the latter case here.

In our view, that is an accurate summation of Minnesota law as it applies to the duty-to-defend issue presented by this appeal. <u>See</u> <u>Reinsurance Ass'n of Minn. v. Timmer</u>, 641 N.W.2d 302, 315 (Minn. App. 2002):

> [B]ecause [the insurer] is arguably required to indemnify the [insureds] against [some of the third-party] claims . . . [the insurer] must defend the [insureds] against all the claims in the [third parties'] underlying complaint. . . . But, because the [third parties'] other claims are not arguably indemnifiable, . . . the district court should have limited its

summary judgment to the issue of [the insurer's] duty to defend and reserved . . . the issue of indemnification, to await a final determination in the [third-party] action.

(b) In arguing that all the "communications and media wrongful acts" alleged in the Cisco complaint were a series of "related acts" that must be deemed committed prior to Policy's Retroactive Date, Travelers relies heavily on the use of the word "scheme" in the Cisco complaint:

[I]t was error for the district court to ignore Cisco's allegation that a common scheme connected Dexon's infringing conduct. To be sure, Cisco *could have* alleged Dexon engaged in discrete acts of trademark infringement, entirely unrelated to any infringing acts prior to May 18, 2019. . . . Instead, Cisco brought its case as against a *serial trademark infringer*.

We agree with the district court that this contention is contrary to well-established Minnesota law regarding a liability insurer's duty to defend because it improperly "focuse[s] on some of the *conduct* being asserted [by Cisco] to prove the *claim*." AMCO, 648 F.3d at 882 (quotation omitted; emphases in original). Cisco pleaded, individually and in detail, thirty-five distinct infringing transactions. Of course, Cisco's attorneys hoped to prove a "scheme" showing Dexon is a "serial trademark infringer."[5] That would no doubt entitle Cisco to significantly enhanced Lanham Act remedies. But if Cisco could not prove that theory, is there any doubt that it would then seek to recover damages and injunctive relief for each transaction that it proved was a sale of a "counterfeit Cisco product?" Under Minnesota law, the duty to defend turns on whether any part of Cisco's cause of action inferentially

---

[5]"A 'scheme' is in the eye of the beholder, since whether a scheme exists depends on the level of generality at which criminality is viewed." H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 241 n.3 (1989). And the existence of a scheme does not necessitate a finding of relatedness.

alleged a species of covered injury that is arguably within the scope of coverage. "If the claim is not *clearly* outside coverage, the insurer has a duty to defend." Prahm, 277 N.W.2d at 390 (emphasis added). Our decision in Sletten & Brettin Orthodontics, LLC v. Continental Casualty Co., 782 F.3d 931 (8th Cir. 2015), on which Travelers relies, did not address this issue and is readily distinguishable.

(c) "[A]ll [Dexon] must show at the duty-to-defend stage is that *one* of [Cisco's trademark infringement] claims is arguably within the policy's scope. If it can, then the burden shifts to [Travelers] to establish that the claims fall *clearly* outside the scope of coverage." Westfield Ins. Co. v. Miller Architects & Bldrs., 949 F.3d 403, 405 (8th Cir. 2020) (citations and quotations omitted; emphases in original).

"If the [third party] claim is not *clearly* outside coverage, the insurer has a duty to defend." Prahm, 277 N.W.2d at 390 (emphasis added). We agree with the district court that the four corners of the Cisco complaint, combined with the facts Dexon furnished to Travelers in tendering defense of the Cisco Action, "substantially undermined" Travelers' categorical assertion that the thirty-five transactions were a series of related acts of trademark infringement. Travelers was aware that the alleged acts of infringement occurred at different times, involved different customers who were sold different products sourced from different suppliers, and that Dexon had received no prior claims involving products sourced from any of these suppliers. Like the district court, we cannot say, as a matter of law, that every act of infringement committed after the Retroactive Date is related to a pre-Retroactive Date act of infringement.

## III. Conclusion

The only issue before us is the duty to defend. "In determining whether a duty to defend exists, we look at the duty as of the time the insured tendered the defense

to the insurer." <u>FACE</u>, 632 F.3d at 420. We agree with the district court that Travelers has a duty to defend Dexon in the entire Cisco Action. Of course, as the parties recognized in their Stipulation, this does not resolve whether Travelers has a duty to indemnify, and if so, the extent of that duty. The answer to those questions will turn on the ultimate resolution of the Cisco Action.

The judgment of the district court is affirmed.

———————————————