# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-2190
_____

J.V. & Sons Trucking, Inc.

*Plaintiff - Appellee*

v.

Asset Vision Logistics, LLC

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: June 11, 2024
Filed: November 12, 2024
_____

Before LOKEN, ERICKSON, and GRASZ, Circuit Judges.
_____

LOKEN, Circuit Judge.

J.V. & Sons Trucking, Inc. ("J.V. & Sons"), a Utah corporation with its principal place of business in Abeline, Texas, hauls crude oil in Texas for logistics brokers and oil-marketing companies. Asset Vision Logistics, LLC ("AVL") is a logistics broker that coordinates the hauling of crude oil from oil wells to refineries. AVL hires trucking company haulers, obtains customer permission to access pickup and drop off sites, provides hauler drivers with information needed to safely access

customer sites, and pays haulers for their services. In June 2019, J.V. & Sons agreed to haul oil for AVL, using AVL's e-ticketing software that is attractive to customers.

In July, after J.V. & Sons had transported nearly 200 loads, AVL advised it would begin paying J.V. & Sons on less favorable terms (after AVL is paid by its customer), but it would pay J.V. & Sons on net-30 terms if J.V. & Sons signed AVL's Quick Pay Agreement ("QPA"). J.V. & Sons signed the written QPA on August 6, 2019. As of that date, J.V. & Sons had hauled 341 loads through AVL and submitted invoices totaling $371,759.61 for 277 of those loads, which AVL paid. J.V. & Sons then hauled loads for AVL under the QPA for a few months before relations soured.

In January 2020, a former AVL employee solicited J.V. & Sons to provide hauling services for clients of his new logistics broker, Continental Logistics ("Continental"). J.V. & Sons began hauling for Continental's clients, including Delek US Holdings ("Delek"), for whom J.V & Sons had hauled through AVL. In February 2020, AVL stopped paying J.V. & Sons for completed hauls. J.V. & Sons stopped performing hauls for AVL and sent an email to AVL terminating their relationship. J.V. & Sons also sent AVL multiple requests for payment of unpaid invoices; AVL acknowledged it would pay the invoices but never did.

On June 24, 2020, J.V. & Sons filed this lawsuit against AVL in Texas state court, alleging breach of contract for failing to pay eight invoices submitted to AVL in February and March 2020. AVL removed the case to the Northern District of Texas, invoking the court's diversity jurisdiction.[1] AVL then answered and filed counterclaims for breach of contract, recoupment, and setoff, alleging J.V. & Sons violated non-solicitation and non-disclosure provisions of the QPA. AVL moved to

---

[1]AVL is a Minnesota limited liability company whose sole member is a citizen of Minnesota. Thus, there is complete diversity of citizenship and the amount in controversy is more than $75,000. See 28 U.S.C. § 1332(a)(1).

transfer the case to the District of Minnesota, citing the QPA's forum selection clause. The motion was granted in December 2020.

On February 3, 2022, the parties filed cross motions for summary judgment. The district court[2] denied AVL's motion, concluding that the non-solicitation and non-disclosure provisions are unenforceable under Texas law,[3] and granted J.V. & Sons's motion in part, concluding that AVL breached the parties' implied contract by failing to pay J.V. & Sons's eight invoices. Order, J.V. & Sons Trucking, Inc. v. Asset Vision Logistics, Inc., No. 20-cv-02538, 2022 WL 4273533 (D. Minn. Sept. 15, 2022) (hereafter cited as "J.V. & Sons Order"). After J.V. & Sons dismissed its remaining claim with prejudice, the district court entered final judgment in favor of J.V. & Sons. See Dexon Comput., Inc. v. Travelers Prop. Cas. Co. of Am., 101 F.4th 969, 973 n.4 (8th Cir. 2024). AVL appeals the judgment of the district court and "all orders subsumed therein, including" the J.V. & Sons Order. AVL argues the district court erred in granting summary judgment based on a binding implied contract and in concluding that the QPA non-solicitation and non-disclosure provisions are unenforceable. Reviewing the grant of summary judgment *de novo*, we affirm. Prospect ECHN, Inc. v. Winthrop Res. Corp., 75 F.4th 885, 889 (8th Cir. 2023) (standard of review).

## I. Additional Background

During the parties' relationship, a typical haul began with an oil company client providing AVL the number of loads to be hauled. AVL reached out to J.V. & Sons's

---

[2]The Honorable Katherine M. Menendez, United States District Judge for the District of Minnesota.

[3]Applying Minnesota choice of law rules, the district court held that Texas law governed both parties' claims. Neither party appeals this conclusion so we will also apply Texas substantive law.

dispatch (or another hauler's dispatch) with the hauling opportunity. If J.V. & Sons accepted the dispatch, it assigned a driver. AVL provided the driver job details through its e-ticketing software, and the driver completed the haul and printed a haul ticket memorializing its details. At the beginning, and periodically thereafter, the parties negotiated the rates AVL would pay J.V. & Sons for future hauls, set forth in a "rate sheet." Each rate sheet listed haul rates per mile in five-mile increments, the minimum number of oil barrels to be hauled, reject rate charges, split-ticket charges, wait time charge rates, high hydrogen sulfide charges, rough road charges, and extra stop charges. The parties negotiated a total of six rate sheets: three for the West Texas Region and three for the East Texas Region. For some unexplained reason, only the West Texas rate sheets are in the record on appeal.

In July 2019, AVL changed its payment schedule, increasing the delay in paying haulers such as J.V. & Sons. Responding to J.V. & Sons's concern, AVL president Joshua Holwell proposed the QPA to J.V. & Sons owner Mike Conners in order to provide J.V. & Sons an option to receive faster payment. Under the QPA, if J.V. & Sons elected to submit an invoice to AVL for "factoring," it would send AVL an "Assignment and Transfer of Receivables" form; if AVL accepted the Assignment, it would send an acceptance and pay J.V. & Sons ninety percent of the invoice before receiving payment from the client and then pay seven percent within ten days of receiving payment from the client, retaining the remaining three percent as its fee.[4] J.V. & Sons signed the QPA. Over the next few months, AVL factored J.V. & Sons's invoices for hundreds of hauls. The parties did not follow the explicit

---

[4]Though the parties called the arrangement "factoring," this seems a misnomer. "A factoring agreement allows a business to convert receivables into cash by selling them at a discount to a factoring company, providing the business with immediate liquidity." Coosemans Specialties, Inc. v. Gargiulo, 485 F.3d 701, 704 n.1 (2d Cir. 2007). Here, there was no transfer of rights to an accounts receivable -- JV & Sons was entitled to payment from AVL, not the oil-company customer, so the effect of the QPA was the timing and amount of payments AVL owed to J.V. & Sons.

-4-

terms of the QPA. They never filled out the Assignment and Transfer of Receivables Forms. When J.V. & Sons sent AVL an invoice by email, AVL acknowledged the invoice and paid J.V. & Sons an advance thirty days later.

The QPA contains two clauses at issue on appeal. First, paragraph 14.3, titled "Non-Solicitation," provides:

> During the Term and for a period of one hundred eighty (180) days following the Purchaser's last transaction with Seller, the Seller shall not, directly or indirectly, solicit or accept any business or enter into an [sic] business relationship in any way with: (a) any of Purchaser's customers or (b) with any person or entity directly or indirectly introduced to Seller by Purchaser.

Second, paragraph 14.4, titled "Non-Disclosure," provides:

> During the Term and thereafter, Seller agrees to hold all Confidential Information in strict confidence and agrees that it shall not (a) disclose any Confidential Information to any other person or (b) use any Confidential Information for the Seller's own benefit or for the benefit of any other person or entity, in each case without Purchaser's express prior written consent. For purposes of this Agreement, "Confidential Information" means all information, whether written or oral, that is disclosed or made available to Seller directly or indirectly, through any means of communication, including Seller's observations by virtue of opportunities provided to Seller by Purchaser.

J.V. & Sons did not inform AVL when it began hauling for Delek through Continental. J.V. & Sons continued accessing Delek sites using permissions J.V. & Sons obtained while hauling through AVL. J.V. & Sons also forwarded emails it received from AVL to Continental, including a Delek "Lease Handling Book" listing the location of pick-up sites and a spreadsheet that Delek required trucking companies to use. When Continental received a cease-and-desist letter from AVL's

counsel advising Continental of the terms of the J.V. & Sons/AVL QPA, Continental terminated its hauling relationship with J.V. & Sons.

## II. Discussion

In the district court, J.V. & Sons moved for summary judgment on its breach of contract claim for nonpayment of eight invoices, arguing the invoices were based on negotiated rates set forth in the rate sheets and J.V. & Sons properly completed the agreed-upon hauls for AVL's clients. In its Opposition, AVL stated: "AVL does not dispute that payment has not been made on the eight invoices." However, AVL asserted, "Plaintiff's claim based on those invoices is subject to AVL's Counterclaims for Recoupment and Setoff." The counterclaims were for damages caused by J.V. & Sons breaches of the QPA non-solicitation and non-disclosure covenants when it solicited and hauled loads for Delek through Continental using AVL's confidential information. AVL further argued that J.V. & Sons "has not identified an enforceable contract" because the rate sheets on which J.V. & Sons relied were not signed by AVL, were for West Texas only, and "contain[ed] very little in terms of contract formalities such as payment terms or other requirements." In response, J.V. & Sons argued (i) the QPA it signed was "not a valid contract" because it was illusory; (ii) even if the QPA were valid, its Non-Solicitation and Non-Disclosure covenants were invalid under Texas law; and (iii) J.V. & Sons did not violate either covenant.

Sorting through this forest of legal arguments, the district court logically began with QPA issues that AVL argued were dispositive. The court initially rejected J.V. & Sons's contention that the QPA is not a valid contract:

> Texas law permits contracts that set the guidelines for future agreements to become enforceable at the point that those future contracts are created. These contracts are not binding alone, but set out the rules of the game in the event the parties decide to play ball. They are valid and enforceable under Texas laws, so long as the parties enter into the

-6-

agreements contemplated in the original contract. . . . Texas courts have previously found factoring agreements to constitute enforceable agreements when coupled with future exchanges of promises.

J.V. & Sons Order at 11 (citations & quotations omitted). After careful review of the cited authorities, we agree. See Shell W. E & P, Inc. v. Pel-State Bulk Plant, LLC, 509 S.W.3d 581, 587-88 (Tex. App. 2016); ODL Servs., Inc. v. ConocoPhillips Co., 264 S.W.3d 399, 414 (Tex. App. 2008).

However, the court concluded, J.V. & Sons is entitled to summary judgment dismissing AVL's counterclaims for damages because the valid QPA's restrictive non-solicitation and non-disclosure covenants are unenforceable under Texas law as a matter of public policy. J.V. & Sons Order at 14-23. Therefore, J.V. & Sons's damage claim is not subject to AVL's claims for recoupment or setoff, Finally, the court concluded that J.V. & Sons is entitled to summary judgment on its breach of contract claim because the unpaid invoices, based on negotiated rate sheets and the parties' course of dealing, together with "rules of the game" established by the valid QPA, are undisputed evidence establishing, "as a matter of law, an implied contract [that] governed [J.V. & Sons] hauling arrangements with AVL." Id. at 24. On appeal, AVL argues that the last two conclusions are wrong and therefore the district court erred in granting summary judgment in favor of J.V. & Sons. Like the district court, we begin with the restrictive covenant issues.

## A. QPA Covenant Issues

Application of Texas restrictive covenant law begins with a governing statute, Tex. Bus. & Com. Code § 15.50(a):

> A covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area,

and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

In determining whether a restrictive covenant is "ancillary to or part of an otherwise enforceable agreement," Texas courts apply a two-part test. First, "we determine whether there is an 'otherwise enforceable agreement' between the parties, then we determine whether the covenant is 'ancillary to or part of' that agreement." Titan Oil & Gas Consultants, LLC v. Willis, 614 S.W.3d 261, 267 (Tex. App. 2020), quoting Marsh USA Inc. v. Cook, 354 S.W.3d 764, 771 (Tex. 2011). To satisfy the second requirement, the party seeking to enforce a covenant, in this case AVL, must show that: "(a) the consideration given by [AVL] in the agreement is reasonably related to an interest worthy of protection and (b) the covenant not to compete was designed to enforce [J.V. & Sons's] consideration or return promise in the agreement." Id. (quotation omitted). Interests that may support a covenant not to compete include "[b]usiness goodwill, confidential or proprietary information, trade secrets, customer information, and specialized training." Id. (quotation omitted). "Unless both elements of the test are satisfied, the covenant cannot be ancillary . . . and is therefore a naked restraint of trade and unenforceable." Id. at 268 (quotation omitted).

**1. The Non-Solicitation Provision.** The district court concluded that the QPA was an "otherwise enforceable agreement" but the non-solicitation provision is unenforceable because it was not ancillary to that agreement -- there was no distinct consideration for the non-solicitation provision and it was not designed to enforce J.V. & Sons's return promises.

**(a)** On appeal, AVL first argues the district court erred because the above-summarized Texas test for the enforceability of non-compete covenants only applies to employer-employee relationships, not to arms-length transactions between businesses such as J.V. & Sons and AVL. We conclude this argument, which finds

no support in the plain language of the statute, is without merit. AVL cites numerous cases applying this test to covenants not to compete in employment contracts, where the issue is often litigated. But AVL cites no case holding that the facially broad scope of § 15.50 is limited to employment contracts, and there is at least some contrary authority. See EJ Madison, LLC v. Pro-Tech Diesel, Inc., 594 S.W.3d 632, 641 (Tex. App. 2019) ("Any Agreement that prohibits Pro-Tech from accepting business from Madison's competitor is a covenant not to compete.") The Supreme Court of Texas has said that "[t]he purpose of the Act is to 'maintain and promote economic competition in trade and commerce,' and it countenances the enforcement of reasonable covenants not to compete." Marsh, 354 S.W.3d at 776. We decline AVL's invitation to narrow this purpose by redrafting this duly enacted Texas statute.

**(b)** AVL argues that, even if the Texas test applies, the non-solicitation covenant is ancillary to the QPA and therefore enforceable because the consideration given by AVL was reasonably related to its interests worthy of protection and the covenant was designed to enforce J.V. & Sons return promises. The district court rejected this contention, concluding the covenant was not ancillary to the otherwise enforceable QPA under Texas law because, first, the record "expressly contradicts AVL's claim that J.V. & Sons would not have had access to the confidential information or hauling work for Delek without the [QPA]." The court emphasized the undisputed evidence that "AVL had repeatedly dispatched J.V. & Sons on hauls for Delek for nearly a month prior to signing the [QPA]." Second, "the Court fails to see how the [non-solicitation covenant] was designed to enforce J.V. & Sons' return promises" because "J.V. & Sons had free reign [under the QPA] to work with AVL's competition so long as they did not work with [AVL's client base]." J.V. & Sons Order at 16-18.

On appeal, AVL argues that the district court's grant of summary judgment on this issue "usurped the jury's role" because "reasonable jurors could differ in their conclusions about whether consideration supports the non-solicitation provision."

In support, AVL points to a declaration from its president, Holwell, that "AVL hired and permitted [J.V. & Sons] to haul for AVL customers from and after August 6, 2019, and gave it access to AVL's Confidential Information . . . only because [J.V. & Sons] agreed to comply with the terms of the Quickpay Agreement." But this declaration does not create a genuine dispute of fact because it is contrary to undisputed evidence in the summary judgment record. AVL makes no effort to dispute the district court's statement, which our review of the record supports, that AVL repeatedly dispatched J.V. & Sons on hauls for Delek and other customers for nearly a month prior to the signing of the QPA.

"The covenant [not to compete] cannot be a stand-alone promise . . . lacking any new consideration." Neurodiagnostic Tex, L.L.C. v. Pierce, 506 S.W.3d 153, 164 (Tex. App. 2016), quoting Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson, 209 S.W.3d 644, 651 (Tex. 2006). Because we uphold the district court's decision that AVL failed to meet the requirement that "the consideration given by [AVL] in the [QPA] is reasonably related to an interest worthy of protection," we need not consider whether the non-solicitation covenant "was designed to enforce J.V. & Sons return promises." Titan Oil, 614 S.W.3d at 267 (quotation omitted). We conclude the district court did not err in concluding that the non-solicitation covenant is not ancillary to an otherwise enforceable agreement and is therefore unenforceable as a matter of law under governing Texas law.

**2. The Non-Disclosure Provision.** As the district court noted, non-disclosure provisions that are limited to protecting confidential and proprietary information are in most cases not restraints on trade, unlike covenants not to compete, and therefore the reasonable time, geographic, and scope-of-activity limitations in § 15.50(a) "are not prerequisites to enforceability." Zep Mfg. Co. v. Harthcock, 824 S.W.2d 654, 663 (Tex. App. 1992). This general rule has an important exception, however: a non-disclosure provision is treated as a non-compete covenant if it "prohibit[s] the former employee from using, in competition with the former employer, the general

knowledge, skill, and experience acquired in former employment." <u>Marquis Software Sols., Inc. v. Robb</u>, No. 3:20-CV-0372-B, 2020 WL 95590, at *9 n.7 (N.D. Tex. Feb. 27, 2020), quoting <u>Zep</u>, 824 S.W.2d at 663.

Applying these principles, the district court concluded that the non-disclosure provision in the QPA is unenforceable because "functionally, if not in the name assigned to it, the non-disclosure provision restricts J.V. & Sons' ability to perform any hauling for other parties in the future given its breadth" and lacks "reasonable limitations as to time, geographical area, and scope of activity to be restrained." <u>J.V. & Sons</u> Order at 22 (quotation omitted).

On appeal, AVL first argues the district court cited no Texas case holding a non-disclosure provision unenforceable for lack of reasonable restrictions. This contention is at best disingenuous. The district court cited numerous cases applying Texas law that treated a non-disclosure covenant as a non-compete covenant if, functionally, its "purpose and effect . . . parallel those inherent in a noncompete agreement." <u>Miller Paper Co. v. Roberts Paper Co.</u>, 901 S.W.2d 593, 599-600 (Tex. App. 1995); see <u>Marquis Software</u>, 2020 WL 955901 at *9 n.7; <u>Oxford Global Res., Inc. v. WeekleyCessnun</u>, No. CIV.A. 3:04-CV-0330-, 2005 WL 350580 (N.D. Tex. Feb. 8, 2005); <u>Unitel Corp. v. Decker</u>, 731 S.W.2d 636, 638 (Tex. App. 1987) (distinguished on this ground in <u>Zep</u>, 824 S.W.2d at 663). The issue is one of contract interpretation: if § 15.50 applies to non-compete agreements generally, as we have concluded, the fact that a restrictive covenant is labeled a non-disclosure provision does not exempt it from § 15.50 if it is in substance a non-compete provision. See <u>Luckel v. White</u>, 819 S.W.2d 459, 463 (Tex. 1991) ("labels . . . are not controlling, and we should give effect to the substance of unambiguous provisions").

In its Reply Brief, AVL abandons this contention and focuses on the real issue -- whether the QPA's non-disclosure provision is enforceable because it is a reasonable restriction that "protects against the very conduct that has now damaged

AVL," not an unreasonable restraint on trade unenforceable under § 15.50. The district court squarely rejected this contention:

> The language of the non-disclosure provision -- specifically, its definition of Confidential Information -- is astoundingly broad. It restricts not only the disclosure of trade secrets or proprietary information, but also the disclosure or *use* by J.V. & Sons of its own observations while conducting hauls for AVL. Under this provision, J.V. & Sons would be unable to use any of the information that its personnel happened to learn while performing hauls for AVL in any future hauling, such as skills for navigating road or weather conditions, basic directions to different hauling sites, and routine safety procedures.

J.V. & Sons Order at 21 (emphasis in original). We agree with the district court that the plain meaning of the information to which the provision applies makes it, in substance, a covenant not to compete. As it has no express limitations as to the time, geographic area, and scope of activity to which it applies, the covenant "impose[s] a greater restraint than is necessary to protect the goodwill or other business interest" of AVL and is unenforceable under § 15.50(a).

## B. The Implied Contract Issue

Not surprisingly, the district court held that AVL's failure to pay each of the eight unpaid invoices that its president admitted were unpaid and should be paid was a breach of an implied contract. As previously noted, the parties have muddied this seemingly clear and simple proposition in the district court and on appeal. AVL argues that J.V. & Sons "has not identified an enforceable contract" because the rate sheets on which J.V. & Sons relies "contain very little in terms of contract formalities such as payment terms or other requirements." In response, J.V. & Sons argues the QPA is not a valid contract because it is illusory. The district court rejected these contentions and concluded that the negotiated rate sheets and the parties' course of dealing in hauling hundreds of loads for AVL's clients, together with "rules of the

-12-

game" determined by the valid QPA, established, "as a matter of law, an implied contract [that] governed [J.V. & Sons's] hauling arrangements with AVL." J.V. & Sons Order at 24.

On appeal, AVL argues that the existence and terms of an implied contract are questions of fact, and therefore it was inappropriate for the district court to grant summary judgment on this issue. We disagree with that contention for a fundamental reason -- what legal authority even suggests that failure to pay an invoice submitted for goods or services *already provided* for the invoiced transaction does *not* give rise to an enforceable breach of contract claim, whether the contract is deemed express or implied? Of course, there may be a defense to the claim, such as the recoupment and setoff counterclaims AVL has unsuccessfully asserted. But "[g]enerally, a party breaches a contract when it fails to pay an invoice on or before the date payment is due." IDA Eng'g, Inc. v. PBK Architects, Inc., No. 05-15-01418-CV, 2016 WL 5791674 at *2 (Tex. App. Oct. 4, 2016); see SCSI, LLC v. Kaco USA, Inc., No. 519CV00035KDBDCK, 2020 WL 7625239 at *6 (W.D.N.C. Dec. 22, 2020); Joseph v. Edeskuty & Assocs. v. Jacksonville Kraft Paper Co., 702 F. Supp. 741, 747-49 (D. Minn. 1988).

Under Texas law, a binding contract requires "an offer; an acceptance in strict compliance with the terms of the offer; a meeting of the minds; each party's consent to the terms; and execution and delivery of the contract with the intent that it be mutual and binding." City of the Colony v. N. Tex. Mun. Water Dist., 272 S.W.3d 699, 720 (Tex. App. 2008). An implied contract differs only "in the character and manner of proof required to establish [it]." Haws & Garret Gen. Contractors, Inc. v. Gorbett Bros. Welding Co., 480 S.W.2d 607, 609 (Tex. 1972). To show an implied contract, a meeting of the minds must be "implied from and evidenced by [the parties'] conduct and course of dealings." Id.

It is undisputed that J.V. & Sons performed the hauling services reflected in each of the eight invoices. In finding an implied contract to pay the amount set forth in J.V. & Sons's invoices, the district court pointed to undisputed evidence. First, the negotiated rate sheets set price points for J.V. & Sons's services. Deposition testimony by Conners and Holwell confirmed they understood that the rate sheets would be the basis for subsequent invoices. Second, the parties' course of conduct supported the claimed obligation to pay these invoices. Conners testified that J.V. & Sons performed hundreds of hauls through AVL and followed the same procedure, submitting invoices consistent with the rate sheet, which AVL paid. Next, the district court cited AVL's interrogatory answer stating, "Defendant admits that the haul rates were agreed to by the parties." Finally, the record includes emails and text messages in which Holwell stated that AVL would pay J.V. & Sons for the invoices.

Focusing exclusively on the rate sheets and communications relating to the rate sheets, AVL argues that the record facts do not establish an implied contract as a matter of law because the rate sheets were not signed by AVL; the rate sheets identified by J.V. & Sons were for West Texas, whereas the breach of contract claim included "East Texas invoices"; and the rate sheets "contain very little in terms of contract formalities such as payment terms or other requirements."

As we have explained, the district court found that the rate sheets set the important price term, but the implied contract included the parties course of dealing and the QPA. Under Texas law, "[p]arties . . . may agree to the material terms of a contract but leave other matters open for later negotiation; it is only when an essential term is left open for future negotiation that no binding contract exists." City of the Colony, 272 S.W.3d at 720. AVL seems to argue that the absence of "payment terms" in the rate sheets makes the implied contract unenforceable. But the rate sheets were not the entire agreement on which the breach of contract claim was based. The claim also relied on the eight invoices, the parties' course of dealing in submitting and paying hundreds of prior invoices, and the "rules of the game"

-14-

established by the QPA. The district court held that the QPA was valid and enforceable *so long as the parties enter into the agreements contemplated in those future contracts*. "Each contract should be considered separately to determine its material terms." T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 221 (Tex. 1992). If the invoices and the parties' subsequent course of dealing established the "essential terms" of the implied contract, then failure to pay a subsequent invoice is an actionable breach of contract.

On appeal, AVL fails to identify any genuine dispute of material fact regarding essential terms of the implied contract *identified by the district court* that were not established in the summary judgment record.

(i) The lack of AVL's signature on the QPA does not preclude an enforceable contract. "[E]ven if an offer and acceptance are not recorded on paper, dealings between parties may result in an implied contract where the facts show that the minds of the parties met on the terms of the contract without any legally expressed agreement." Ishin Speed Sport, Inc. v. Rutherford, 933 S.W.2d 343, 348 (Tex. App. 1996). The evidence on which the district court relied established a meeting of the minds to pay future invoices at the rates set forth in the negotiated rate sheets. Cf. Eastman Gas Co. v. Goodrich Petroleum Co., 456 S.W.3d 319, 329 (Tex. App. 2015) ("Under the facts of this case, the manner of payment and the amount and rate of interest are not essential terms.").

(ii) The absence of East Texas rate sheets in the summary judgment record was no doubt a potentially serious oversight by counsel for J.V. & Sons. But we agree with the district court that the record evidence makes clear AVL understood it was bound by the rate sheets to pay the invoiced amounts, and the East Texas invoices which AVL acknowledged it should and would pay are evidence of the rates. AVL points to no evidence in the record supporting a contrary inference, so this argument does not create a genuine dispute of material fact.

(iii) AVL further argues that "the district court completely disregarded the terms of the [QPA], which the district court determined was enforceable and which contains [sic] a merger clause." This assertion is not just disingenuous; it is false. The district court's analysis carefully defined an important but limited role for the QPA in the implied contract that the court found. The QPA expressly contemplated that future dealings and agreements, such as the hauls reflected in the eight invoices, would determine the parties' respective obligations regarding future transactions. The QPA's merger clause was simply irrelevant to the breach-of-contract claims presented to the district court.

For the foregoing reasons, the judgment of the district court is affirmed.

_____